**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VIEN-PHUONG THI HO,
*Plaintiff-Appellant*,

v.

RECONTRUST COMPANY, NA,
subsidiaries of Bank of
America, N.A.;
COUNTRYWIDE HOME LOANS
INC; BANK OF AMERICA, N.A.,
*Defendants-Appellees*.

No. 10-56884

D.C. No.
2:10-cv-00741-GW-SS

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted June 5, 2015
Submission Vacated June 8, 2015
Resubmitted September 3, 2015
Pasadena, California

Filed October 19, 2016

Before: Alex Kozinski and Consuelo M. Callahan, Circuit Judges, and Edward R. Korman,[*] Senior District Judge.

Opinion by Judge Kozinski;
Partial Dissent and Partial Concurrence by Judge Korman

---

## SUMMARY[**]

### Fair Debt Collection Practices Act

Affirming in part and vacating in part the district court's dismissal of an action for failure to state a claim, the panel held that the trustee of a California deed of trust securing a real estate loan was not a "debt collector" under the Fair Debt Collection Practices Act.

Seeking damages under the FDCPA, the plaintiff alleged that the trustee of the deed of trust on her property sent her a notice of default and a notice of sale that misrepresented the amount of debt she owed. The plaintiff also sought to rescind her mortgage transaction under the Truth in Lending Act.

Disagreeing with the Fourth and Sixth Circuits, and agreeing with the California Courts of Appeal, the panel held that the trustee was not a "debt collector" subject to damages

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

under the FDCPA because the trustee was not attempting to collect money from the plaintiff.  The panel held that the object of a non-judicial foreclosure in California is to retake and resell the security on the loan.  Thus, actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect "debt" as that term is defined by the FDCPA.  The panel wrote that following a trustee's sale, the trustee collects money from the home's purchaser, not the original borrower.  Because the money collected from a trustee's sale is not money owed by a consumer, it is not "debt."  Accordingly, the foreclosure notices were an enforcement of a security interest, rather than general debt collection under 15 U.S.C. § 1692a(6).  Citing *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016), the panel declined to create a conflict with state foreclosure law in its interpretation of the ambiguous term "debt collector."  Accordingly, the panel affirmed the dismissal of the FDCPA claim.

The panel held that even though the district court twice dismissed the plaintiff's TILA rescission claim and she did not replead it in her third complaint, it was preserved for appeal because the district court instructed her that she would be required to allege the ability to repay the loan in order to state a rescission claim.  The panel held that under *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023 (9th Cir. 2014), decided after the district court's dismissal, a mortgagor need not allege the ability to repay in order to state a rescission claim.  Accordingly, the panel vacated the dismissal of the TILA claim and remanded for consideration of the claim in light of *Merritt*.

The panel affirmed the dismissal of other claims in a concurrently filed memorandum disposition.

Judge Korman dissented in part and concurred in part. He wrote that the only reasonable reading of the FDCPA is that a trustee pursuing a non-judicial or judicial foreclosure proceeding is a debt collector because both proceedings are intended to obtain money by forcing the sale of the property being foreclosed upon. He also wrote that the FDCPA does not interfere with California's arrangement for conducting non-judicial foreclosures in a way that would justify nullifying the protections that the FDCPA provides, and the FDCPA's preemption section provides ample room for the operation of California law. Judge Korman concurred in the remand to the district court for consideration of the TILA rescission cause of action.

## COUNSEL

Nicolette Glazer, Esq. (argued), Law Offices of Larry R. Glazer, Century City, California, for Plaintiff-Appellant.

Margaret M. Grignon (argued) and Kasey J. Curtis, Reed Smith LLP, Los Angeles, California; Carolee A. Hoover and David C. Powell, McGuire Woods LLP, San Francisco, California; for Defendants-Appellees.

Dean T. Kirby, Jr. and Martin T. McGuinn, Kirby & Mcguinn, A P.C., San Diego, California, for Amici Curiae United Trustee's Association, California Bankers Association, American Legal and Financial Network, Arizona Trustee Association and California Mortgage Association.

Meredith Fuchs, General Counsel, To-Quyen Truong, Deputy General Counsel, John R. Coleman, Assistant General Counsel, Nandan M. Joshi and Thomas M. McCray-Worrall, Attorneys, Consumer Financial Protection Bureau, Washington, D.C., for Amicus Curiae Consumer Financial Protection Bureau.

## OPINION

KOZINSKI, Circuit Judge:

The principal question in this appeal is whether the trustee of a California deed of trust is a "debt collector" under the Fair Debt Collection Practices Act (FDCPA).

## FACTS

Vien-Phuong Thi Ho bought a house in Long Beach using funds she borrowed from Countrywide Bank. The loan was secured by a deed of trust. A deed of trust involves three parties. *See Yvanova* v. *New Century Mortg. Corp.*, 62 Cal. 4th 919, 926–27 (Cal. 2016) (explaining California deeds of trust). The first party is the lender, who is the trust beneficiary. The second party is the borrower-trustor, who holds equitable title to the property. The third party is the trustee, an agent for both the lender and the borrower who is authorized to sell the property if the debtor defaults. *Id.* at 927. In this case, the lender was Countrywide, the borrower was Ho and the trustee was ReconTrust.

After Ho began missing loan payments, ReconTrust initiated a non-judicial foreclosure. *See id.* at 926–27 (detailing California's complex statutory procedure governing non-judicial foreclosures). As the first step in this process, ReconTrust recorded a notice of default and mailed this notice to Ho. *See* Cal. Civ. Code § 2924(a)(1). The notice advised Ho that she owed more than $20,000 on her loan and that she "may have the legal right to bring [her] account in good standing by paying all of [her] past due payments" to Countrywide. The notice also advised Ho that her home "may be sold without any court action." Ho did not pay up.

ReconTrust then took the second step in the process by recording and mailing a notice of sale. *See* Cal. Civ. Code §§ 2924(a)(3). This notice advised Ho that her home would be auctioned "unless [she took] action to protect [her] property." Following the trustee's sale, ReconTrust would deliver the deed to the purchaser and the proceeds of the sale to Countrywide. *See* 5 Harry D. Miller & Marvin B. Starr, *Cal. Real Est.* § 13:1 (4th ed. 2015). Ho would then lose both possession of the house and her right of redemption. *Id.* §§ 13:266, 13:267.[1]

Ho filed this lawsuit alleging that ReconTrust violated the FDCPA by sending her notices that misrepresented the amount of debt she owed. *See* 15 U.S.C. § 1692e(2)(A). Ho also sought to rescind her mortgage transaction under the Truth in Lending Act (TILA) on the ground that the defendants had perpetrated fraud against her. *See* 15 U.S.C. § 1635(a). The district court twice dismissed Ho's rescission claim without prejudice, and Ho did not replead it. The district court then granted ReconTrust's motion to dismiss Ho's FDCPA claims.[2]

---

[1] It's not clear from the record whether a trustee's sale ever occurred. The notice of sale advised Ho that her home would be sold on a certain date. However, Ho's loan servicer approved a modification of the loan a few days prior to that date. The parties say nothing further about the trustee's sale. For our purposes, it doesn't matter whether the sale took place. Sale of the house would not render the case moot because Ho is seeking damages.

[2] The district court also dismissed Ho's other claims under the FDCPA, the Racketeer Influenced and Corrupt Organizations Act and the Real Estate Settlement Procedures Act. We affirm these dismissals in a memorandum disposition filed concurrently herewith.

Ho appeals, arguing that ReconTrust is a "debt collector" because the notice of default and the notice of sale constitute attempts to collect debt. Because both notices threatened foreclosure unless Ho brought her account current, she reasonably viewed those documents as an inducement to pay up. Ho also argues that her TILA rescission claim should be reinstated on appeal because our circuit clarified the requirements for such a claim between the district court's dismissal and this appeal. *See Merritt* v. *Countrywide Fin. Corp.*, 759 F.3d 1023, 1032–33 (9th Cir. 2014).

## DISCUSSION

## I

The FDCPA subjects "debt collectors" to civil damages for engaging in certain abusive practices while attempting to collect debts. *See* §§ 1692d–f, 1692k. The statute's general definition of "debt collector" captures any entity that "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." § 1692a(6). Debt is defined as an "obligation . . . of a consumer to pay money." § 1692a(5).

The FDCPA imposes liability only when an entity is attempting to collect debt. 15 U.S.C. § 1692(e). For the purposes of the FDCPA, the word "debt" is synonymous with "money." 15 U.S.C. § 1692a(5). Thus, ReconTrust would only be liable if it attempted to collect money from Ho. And this it did not do, directly or otherwise. The object of a non-judicial foreclosure is to retake and resell the security, not to collect money from the borrower. California law does not allow for a deficiency judgment following non-judicial foreclosure. This means that the foreclosure extinguishes the

entire debt even if it results in a recovery of less than the amount of the debt. Cal. Civ. Code § 580d(a); *see Burnett* v. *Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1239 (10th Cir. 2013) ("[A] non-judicial foreclosure does not result in a mortgagor's obligation to *pay money*—it merely results in the sale of property subject to a deed of trust."); *Alaska Tr., LLC* v. *Ambridge*, No. S-14915, 2016 WL 852265, at \*16 (Alaska Mar. 4, 2016) (Winfree, J., dissenting) (noting that non-judicial foreclosure "does not in and of itself collect a debt, but rather calls for the vesting and divesting of title to real property according to the parties' prior agreement" (internal quotation marks omitted)). Thus, actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect "debt" as that term is defined by the FDCPA.

The prospect of having property repossessed may, of course, be an inducement to pay off a debt. But that inducement exists by virtue of the lien, regardless of whether foreclosure proceedings actually commence. The fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector.

Our holding today affirms the leading case of *Hulse* v. *Ocwen Federal Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which held that "foreclosing on a trust deed is an entirely different path" than "collecting funds from a debtor."[3] We acknowledge that two circuits have declined to

---

[3] The dissent's effort to discount *Hulse*, dissent at 22, doesn't change the fact that *Hulse* is indeed the leading case for what other courts have recognized as the majority position. *See, e.g.*, *Aurora Loan Servs., LLC* v. *Kmiecik*, 992 N.E.2d 125, 134 (Ill. App. Ct. 2013) ("The minority view

follow *Hulse*. *Glazer* v. *Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); *Wilson* v. *Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378–79 (4th Cir. 2006). But we find neither case persuasive. The Fourth Circuit in *Wilson* was more concerned with avoiding what it viewed as a "loophole in the Act" than with following the Act's text. 443 F.3d at 376. We rely on policy to help interpret statutory language; we don't make it ourselves. The Sixth Circuit's decision in *Glazer* rests entirely on the premise that "the ultimate purpose of foreclosure is the payment of money." 704 F.3d at 463. But the FDCPA defines debt as an "obligation of a *consumer* to pay money." 15 U.S.C. § 1692a(5) (emphasis added). Following a trustee's sale, the trustee collects money from the home's purchaser, not from the original borrower. Because the money collected from a trustee's sale is not money owed by a consumer, it isn't "debt" as defined by the FDCPA.

The most plausible reading of the statute is that the foreclosure notices were "the enforcement of [a] security interest[]" as contemplated by section 1692f(6) rather than "debt collection" as contemplated by section 1692a. The FDCPA's general definition of "debt collector," contained at section 1692a(6), applies to entities that "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." Entities that qualify as debt collectors under this general definition are debt collectors for purposes of the entire statute. However,

taken is that the act of foreclosing on a mortgage is the collection of a debt according to the FDCPA."). District courts across our circuit have approved of *Hulse* time and again. *See, e.g.*, *Castro* v. *Exec. Tr. Servs., LLC*, No. CV-08-2156-PHX-LOA, 2009 WL 438683, at *6 (D. Ariz. Feb. 23, 2009); *Izenberg* v. *ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); *Ines* v. *Countrywide Home Loans, Inc.*, No. 08cv1267WQH(NLS), 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008).

the FDCPA also includes a narrower definition of "debt collector." This narrower definition of the term "also includes" entities whose principal business purpose is "the enforcement of security interests." 15 U.S.C. § 1692a(6). This provision would be superfluous if all entities that enforce security interests were already included in the definition of debt collector for purposes of the entire FDCPA. But the relationship between sections 1692a(6) and 1692f(6) makes sense if some security enforcers are debt collectors only for the limited purposes of section 1692f(6). All parties agree that ReconTrust is a debt collector under the narrow definition. Ordinarily, section 1692f(6) would protect a consumer against the abusive practices of a security enforcer who does not fit the broader definition of a debt collector. But that doesn't matter in our case because ReconTrust is not accused of conduct prohibited by section 1692f(6). The sole question here is whether ReconTrust is a debt collector under the general definition—that is, whether ReconTrust "regularly collects" debts.

We do *not* hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests. If entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors. We hold only that the enforcement of security interests is not always debt collection. We agree with the dissent that the terms are not mutually exclusive. But they also aren't coextensive.[4]

---

[4] The dissent's extensive reliance on the FDCPA's judicial venue clause, dissent at 34–36, fails for the same reason. The clause indeed contemplates that a security enforcer can be a debt collector, but it offers no indication that an entity is a debt collector *because* it enforces a security interest.

We therefore agree with a central premise of *Wilson* and *Glazer*: An entity does not become a general "debt collector" if its "only role in the debt collection process is the enforcement of a security interest." *Wilson*, 443 F.3d at 378; *see Glazer*, 704 F.3d at 464. But from there our paths diverge. We view all of ReconTrust's activities as falling under the umbrella of "enforcement of a security interest." Under California's non-judicial foreclosure statutes, ReconTrust could not conduct the trustee's sale until it sent the notice of default and the notice of sale. If ReconTrust can administer a trustee's sale without collecting a debt, it must be able to maintain that status when it takes the statutorily required steps to conduct the trustee's sale. The right to "enforce" the security interest necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context.[5]

The *Glazer* court rejected this view, noting that it couldn't think of anyone other than repossessors "whose only role in the collection process is the enforcement of security interests." 704 F.3d at 464. *Glazer* explained that a "lawyer principally engaged in mortgage foreclosure does not meet this criteria [sic], for he must communicate with the debtor regarding the debt during the foreclosure proceedings," but

---

[5] Again, a trustee of a deed of trust might become a "debt collector" under the general definition if he did something *in addition* to the actions required to enforce a security interest. *See Derisme*, 880 F. Supp. 2d at 326; *see also Kaltenbach* v. *Richards*, 464 F.3d 524, 528–29 (5th Cir. 2006). Ho makes no argument that ReconTrust did more than what was required by California law to enforce the deed of trust. It recorded and mailed notices that were scripted by the California legislature. *See* Cal. Civ. Code § 2924. And, while these notices advised Ho that she could avoid foreclosure by paying up, that was required by California law in order to conduct the trustee's sale.

this is "not so for repossessors, who typically 'enforce' a security interest—*i.e.*, repossess or disable property—when the debtor is not present, in order to keep the peace." 704 F.3d at 464. We find this distinction unpersuasive. The FDCPA itself recognizes that repossessors will communicate with debtors.[6] Enforcement of a security interest will often involve communications between the forecloser and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection.

The notices at issue in our case didn't request payment from Ho.[7] They merely informed Ho that the foreclosure process had begun, explained the foreclosure timeline, apprised her of her rights and stated that she could contact Countrywide (not ReconTrust) if she wished to make a payment. These notices were designed to *protect* the debtor.

---

[6] Section 1692a(6) provides that enforcers of security instruments are debt collectors only for the limited purposes of section 1692f. Section 1692f(6) prohibits "[t]aking *or threatening to take* any nonjudicial action to effect dispossession or disablement of property" (emphasis added). By referring to "threats" and not just actions, the statute contemplates that repossessors will communicate with debtors. The fact that Congress went out of its way to expose enforcers of security interests to liability for "threatening" debtors shows that such enforcers were expected to do more than merely repossess property in the middle of the night.

[7] The dissent makes much of the fact that the notice of trustee's sale included a disclaimer stating that ReconTrust "is a debt collector attempting to collect a debt." This disclaimer isn't sufficient to show that ReconTrust is a debt collector. *See Guerrero* v. *RJM Acquisitions LLC*, 499 F.3d 926, 932 (9th Cir. 2007) (per curiam); *see also Gburek* v. *Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (similar). "Debt collector" isn't an elective category. It's determined objectively, based on the activities of the entity in question.

They are entirely different from the harassing communications that the FDCPA was meant to stamp out. Thus, we agree with the California Courts of Appeal that "giving notice of a foreclosure sale to a consumer as required by the [California] Civil Code does not constitute debt collection activity under the FDCPA." *Pfeifer* v. *Countrywide Home Loans, Inc.*, 150 Cal. Rptr. 3d 673, 684 (Cal. Ct. App. 2012); *see Fonteno* v. *Wells Fargo Bank, N.A.*, 176 Cal. Rptr. 3d 676, 690–92 (Cal. Ct. App. 2014).**[8]**

Even though the notices didn't explicitly request payment, Ho contends that they still qualify as debt collection because they pressured her to send money to Countrywide. *See Burnett*, 706 F.3d at 1239. But, as we've explained, the enforcement of a security interest often creates an incentive to pay the underlying debt. If this were sufficient to transform the enforcement of security interests into debt collection, then all security enforcers would be debt collectors. This would render meaningless the FDCPA's carefully drawn distinction between debt collectors and enforcers of security interests, and expand the scope of the FDCPA well past the boundary of clear congressional intent and common sense.

An additional consideration weighs in favor of ReconTrust: Holding trustees liable under the FDCPA would subject them to obligations that would frustrate their ability to comply with the California statutes governing non-judicial foreclosure. ReconTrust lists a half dozen conflicts between

---

**[8]** We find it significant that California expressly exempts trustees of deeds of trust from liability under the Rosenthal Act, the state analogue of the FDCPA. *See* Cal. Civ. Code. § 2924(b). The California legislature clearly views such trustees as materially different from debt collectors.

the FDCPA and California law.  For example, the FDCPA prohibits debt collectors from communicating with third parties about the debt absent consent from the debtor.  15 U.S.C. § 1692c(b).  But California law requires the trustee to announce all trustee's sales in a newspaper and mail the notice of default to various third parties.  *See* Cal. Civ. Code §§ 2924b(c)(1)–(2), 2924f(b).    Moreover, the FDCPA prohibits debt collectors from directly communicating with debtors if the debt collector knows that the debtor is represented by counsel.  15 U.S.C. § 1692c(a)(2).  California law requires the trustee to mail the notices of default and sale directly to the borrower, and makes no exception for borrowers who are represented by counsel.  Cal. Civ. Code. §§ 2924b(b)(1), 2924f(c)(3).  In both of these cases, a trustee could not comply with California law without violating the FDCPA.

Things would become even more complicated if the consumer elected to dispute the debt pursuant to the FDCPA.  In such a case, a trustee would be required to "cease collection of the debt" until he obtained verification of that debt.  15 U.S.C. § 1692g(b).  California law compels trustees to mail a copy of the notice of default within ten business days after recording it.  Cal. Civ. Code § 2924b(b)(1).  If the consumer disputes his debt as soon as it is recorded, the trustee would have to seek verification of the debt, and would be unable to mail the notice until the debt was verified.  In the likely event that such verification took longer than ten days, the trustee would miss California's statutory deadline for mailing out the notice.  And if verification requests or other hassles resulted in a delay of a year or longer, the trustee would be required to restart the foreclosure process.  *See* § 2924g(c)(2).

ReconTrust's amici suggest that holding trustees liable as debt collectors would "literally prevent [California's foreclosure] system from functioning." Brief for United Trustee's Ass'n et al. as Amici Curiae Supporting Defendants-Appellees, *Ho* v. *ReconTrust* (No. 10-56884), 2015 WL 1020492, at *4. In an amicus brief filed in support of Ho, the Consumer Financial Protection Bureau conceded that "a conflict may exist between state and federal law." Brief for Consumer Financial Protection Bureau as Amicus Curiae Supporting Plaintiff-Appellant, *Ho* v. *ReconTrust* (No. 10-56884), 2015 WL 4735787, at *14.[9] There can be no doubt that labeling ReconTrust a debt collector under the broader definition of the FDCPA would create sustained friction between the federal statute and the state scheme.

Earlier this year, the Supreme Court instructed us that the FDCPA should not be interpreted to interfere with state law unless Congress clearly intended to displace that law. *Sheriff* v. *Gillie*, 136 S. Ct. 1594, 1602 (2016). *Sheriff* involved an Ohio statute that authorized the state Attorney General to retain independent contractors to collect debts owed to the state. The Attorney General authorized these independent contractors to send debt collection notices on his letterhead. *Id.* at 1599. Several recipients of these notices sued the contractors for violating the FDCPA, claiming that their use

---

[9] At our invitation, the agency filed an amicus brief arguing that all trustees of deeds of trust are debt collectors under section 1692a(6). The agency has not exercised its authority to promulgate a rule interpreting the term "debt collector." Thus, we accord deference to the agency's interpretation of that phrase only to the extent that we find that interpretation persuasive. *See United States* v. *Mead Corp.*, 533 U.S. 218, 226–29 (2001) (citing *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 139–40 (1944)). We are unpersuaded by the agency's reading of the statute and therefore do not defer to it.

of the Attorney General's letterhead was misleading. *See* 15 U.S.C. § 1692e. The Supreme Court held that the notices were not deceptive and therefore ruled in favor of the independent contractors. In reaching that conclusion, the Court "note[d] a federalism concern." *Sheriff*, 136 S. Ct. at 1602. Because Ohio's attempt to collect on its debts is "a core sovereign function," the Court was loath to interpret the FDCPA to interfere with the debt collection methods Ohio had chosen to adopt. *Id.* It held that there was no cause "to construe federal law in a manner that interferes with 'States' arrangements for conducting their own governments.'" *Id.* (quoting *Nixon* v. *Missouri Mun. League*, 541 U.S. 125, 140 (2004)).

*Sheriff*'s efforts to protect Ohio law from federal encroachment reflect the Supreme Court's strong fidelity to the "federalism canon." *See Gregory* v. *Ashcroft*, 501 U.S. 452, 460 (1991). According to the Court, "federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power, in the absence of the plain statement *Gregory* requires." *Nixon*, 541 U.S. at 140. This presumption applies with particular force when Congress legislates "in a field which the States have traditionally occupied." *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see Medtronic, Inc.* v. *Lohr*, 518 U.S. 470, 485 (1996). That admonition is especially relevant to our case, as there is little doubt that foreclosure is a traditional area of state concern. *See BFP* v. *Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (characterizing the regulation of foreclosures as "an essential state interest"); *Rank* v. *Nimmo*, 677 F.2d 692, 697 (9th Cir. 1982) (noting that "mortgage foreclosure has traditionally been a matter for

state courts and state law"). It follows that "the presumption against preemption remains in effect where [a federal statute] is alleged to preempt state foreclosure laws." *Higley* v. *Flagstar Bank*, 910 F. Supp. 2d 1249, 1257 n.7 (D. Or. 2012).

We find no comfort in the dissent's suggestion that the conflicts between California law and the FDCPA can be mitigated by consent between the parties to a mortgage deal. Dissent at 40–44. The fact that parties may be able to draft their way around conflicts renders them conflicts no less. Relegating future parties to the uncertain process of adding contractual terms may itself upset a state's carefully drawn scheme of notice and disclosure; additional efforts or more complex terms are themselves costs of that conflict. The point of the federalism canon isn't to resolve ambiguities so that we can, with a little more effort, enjoy a brackish mix of state and federal law. The point is to keep the federal government from creating *any* conflict with traditional state lawmaking absent clear congressional intent.

When one interpretation of an ambiguous federal statute would create a conflict with state foreclosure law and another plausible interpretation would not, we must adopt the latter interpretation.[10] The statutory phrase "debt collector" is notoriously ambiguous, causing our sister circuits to divide as to whether foreclosure-related activities constitute debt

---

[10]  *See Sheriff*, 136 S. Ct. at 1602; Brief for Michigan and 11 Other States as Amici Curiae Supporting Petitioners at 4–17, *Sheriff* v. *Gillie*, 136 S. Ct. 1594 (2016) (No. 15-338) (arguing that the federalism canon should be employed when interpreting ambiguous language in the FDCPA).

collection.[11]   Even courts holding that foreclosure is debt collection have recognized that the term "debt collector" is cryptic.  *E.g.*, *Glazer*, 704 F.3d at 460; *Ambridge*, 2016 WL 852265, at \*11 (observing that "the FDCPA could certainly be clearer on the question").   Given this ambiguity, we decline to "construe federal law in a manner that interferes with [California's] arrangements for conducting" non-judicial foreclosures.  *Sheriff*, 136 S. Ct. at 1602 (internal quotation marks omitted).

## II

The district court twice dismissed Ho's TILA rescission claim without prejudice, and Ho didn't replead it in her third complaint.   We have held that claims dismissed without prejudice and not repleaded are not preserved for appeal; they are instead considered "voluntarily dismissed."  *See Lacey* v. *Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).   Here, however, the district court didn't give Ho a free choice in whether to keep repleading the TILA rescission claim.   Rather, the court said that if Ho wished to replead the claim she "would be required to allege that she is prepared and able to pay back the amount of her purchase price less any down-payment she contributed and any payments made since the

---

[11]   *Compare Glazer*, 704 F.3d at 461 (holding that all "mortgage foreclosure is debt collection" for the purposes of the FDCPA); *Wilson*, 443 F.3d at 378–79 (similar); *and Piper* v. *Portnoff Law Assocs., Ltd.*, 396 F.3d at 235–36 (3d Cir. 2005) (similar), *with Burnett*, 706 F.3d at 1239 (suggesting that non-judicial foreclosure is not debt collection for purposes of the FDCPA, but refusing to so hold); *Warren* v. *Countrywide Home Loans, Inc.*, 342 F. App'x 458, 461 (11th Cir. 2009) (holding that "foreclosing on a home is not debt collection for purposes" of the FDCPA); *and Brown* v. *Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (holding that "foreclosure is *not per se* FDCPA debt collection").

time of her purchase." The judge concluded that if Ho "is not able to make that allegation in good faith, she should not continue to maintain a TILA rescission claim." It's unclear whether the judge meant this as benevolent advice or a stern command. But a reasonable litigant, particularly one proceeding pro se, could have construed this as a strict condition, one that might have precipitated the judge's ire or even invited a sanction if disobeyed. Ho could not or would not commit to pay back the loan, and dropped the claim in her third complaint.

The district court based its condition on *Yamamoto* v. *Bank of N.Y.*, which gave courts equitable discretion to "impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." 329 F.3d 1167, 1173 (9th Cir. 2003). But, after the district court dismissed Ho's claims, we held that a mortgagor need not allege the ability to repay the loan in order to state a rescission claim under TILA that can survive a motion to dismiss. *Merritt* v. *Countrywide Fin. Corp.*, 759 F.3d 1023, 1032–33 (9th Cir. 2014). Ho argues that her rescission claims were properly preserved for appeal and should be reinstated.

Where, as here, the district court dismisses a claim and instructs the plaintiff not to refile the claim unless he includes certain additional allegations that the plaintiff is unable or unwilling to make, the dismissed claim is preserved for appeal even if not repleaded. A plaintiff is the master of his claim and shouldn't have to choose between defying the district court and making allegations that he is unable or unwilling to bring into court.

This rule is a natural extension of our holding in *Lacey*. The *Lacey* rule—which displaced our circuit's longstanding and notably harsh rule that all claims not repleaded in an amended complaint were considered waived—was motivated by two principal concerns: judicial economy and fairness to the parties. 693 F.3d at 925–28. Those concerns apply here. We see no point in forcing a plaintiff into a drawn-out contest of wills with the district court when, for whatever reason, the plaintiff chooses not to comply with a court-imposed condition for repleading. We remand to the district court for consideration of Ho's TILA rescission claim in light of *Merritt* v. *Countrywide Fin. Corp.*, 759 F.3d at 1032–33.

**AFFIRMED** in part, **VACATED** and **REMANDED** in part. No costs.

KORMAN, District Judge, dissenting in part and concurring in part:

The majority opinion opens with the principal question presented by this case: "[W]hether the trustee of a California deed of trust is a 'debt collector' under the Fair Debt Collection Practices Act (FDCPA)." Maj. Op. at 6. After a discussion of the issue, the majority concludes by observing that the phrase "debt collector" is "notoriously ambiguous" and that, given this ambiguity, we should refuse to construe it in a manner that interferes with California's arrangements for conducting nonjudicial foreclosures. Maj. Op. at 18–19.

My reading of the Fair Debt Collection Practices Act ("FDCPA"), consistent with the manner in which it has been construed by every other circuit that has addressed whether

foreclosure procedures are debt collection subject to the FDCPA, suggests that the only reasonable reading is that a trustee pursuing a nonjudicial foreclosure proceeding is a debt collector.  *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015), *cert. denied*, 136 S.Ct. 794 (2016); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461–63 (6th Cir. 2013); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376–77 (4th Cir. 2006); *see also Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 213–216 (Alaska 2016); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 123–24 (Colo. 1992) (en banc).  The same is true of a judicial foreclosure proceeding—an alternative available in California. *See Coker v. JPMorgan Chase Bank, N.A.*, 364 P.3d 176, 178 (Cal. 2016).  Both are intended to obtain money by forcing the sale of the property being foreclosed upon.

The majority "affirms" what it characterizes as the "leading case" of *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002), which held that "foreclosing on a trust deed is an entirely different path" than "collecting funds from a debtor," because "[p]ayment of funds is not the object of the foreclosure action.  Rather the lender is foreclosing its interest in the property." *Id.* at 1204.  The reasoning in *Hulse*, if one could call it that, is contained in two short paragraphs, and it is the leading case only in the number of appellate cases that have by name rejected its reasoning.  *See, e.g.*, *Glazer*, 704 F.3d at 460, 463; *Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006); *Wilson*, 443 F.3d at 376.

This is not surprising.  The suggestion in *Hulse* that a foreclosure proceeding is one in which "the lender is foreclosing its interest in the property" is flatly wrong.  A foreclosure proceeding is one in which the interest of the

debtor (and not the creditor) is foreclosed in a proceeding conducted by a trustee who holds title to the property and who then uses the proceeds to retire all or part of the debt owed by the borrower. *See* Cal. Civ. Code § 2931; *Yvanova v. New Century Mortg. Corp.*, 365 P.3d 845, 850 (Cal. 2016). Any excess funds raised over the amount owed by the borrower (and costs associated with the foreclosure) are paid to the borrower. *See* Cal. Civ. Code § 2924k; *see also* Jesse Dukeminier & James E. Krier, *Property* 590 (2d ed. 1988). Thus, contrary to the holding in *Hulse*, "[t]here can be no serious doubt that the ultimate purpose of foreclosure is the payment of money." *Glazer*, 704 F.3d at 463. Nor, because the FDCPA defines a "debt collector" as one who collects or attempts to collect, "directly or indirectly," debts owed to another, 15 U.S.C. § 1692a(6), does it matter that the money collected at a foreclosure sale does not come directly from the debtor.

Because the majority makes *Hulse* the foundation of its analysis, it papers over *Hulse*'s irredeemably flawed analysis by suggesting that it comes close to being the seminal case in the area. Nevertheless, it can only do so by relying on an intermediate Illinois appellate court decision for the proposition that "*Hulse* is indeed the leading case for what other courts have recognized as the majority position." Maj. Op. at 9 n.3 (citing *Aurora Loan Servs., LLC v. Kmiecik*, 992 N.E.2d 125, 134 (Ill. App. Ct. 2013)). The Illinois appellate court decision did not do its own "head count." Instead it cited *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464 (6th Cir. 2013), for the proposition that "[t]he minority view taken is that the act of foreclosing on a mortgage is the collection of a debt according to the FDCPA." *Aurora Loan Servs., LLC*, 992 N.E.2d at 134. *Glazer*, in turn, said no more than a contrary view has been "adopted by a majority of district

courts." *Glazer*, 704 F.3d at 460. We do not decide cases on the basis of "head counts" of district court cases, although we should at least be concerned when we reach a result that has been rejected by every circuit that has decided the issue in a published opinion. *See* Maj. Op. at 19 n.11 (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378–79 (4th Cir. 2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 235–36 (3d Cir. 2005)).

After analyzing the majority's construction of the FDCPA, I discuss below each of the conflicts conjured by the majority and show that the FDCPA does not interfere with California's arrangement for conducting nonjudicial foreclosures in a way that would justify nullifying the protections that the FDCPA provides. More significantly, the language of the FDCPA's preemption section provides ample room for the operation of California law without the need for exempting an entire category of debt collectors. Thus, it provides that the FDCPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1692n.

While this suggests a desire to interfere as little as possible "with the laws of any State," it gives effect to the concern that the "primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the State level." S. Rep. No. 95-382, at 2 (1977). "Congress enacted the FDCPA despite the fact that some states already had procedural requirements for debt collectors . . . in place,

because it 'decided to protect consumers who owe money by adopting a different, and in part more stringent, set of requirements that would constitute minimum national standards for debt collection practices.'" *Piper*, 396 F.3d at 236 n.11 (quoting *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998)).  Indeed, one of the declared purposes of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

This case affords no basis for undermining the minimum national standards that Congress has adopted.  Nor does it justify ignoring the rule we have followed consistently that, as "a broad remedial statute," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011), the FDCPA must be liberally construed in favor of the consumer.  *Hernandez v. Williams, Zinman & Parham PC*, No. 14-15672, — F.3d —, 2016 WL 3913445, at *8 (9th Cir. July 20, 2016); *see also Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). Indeed, the foreclosure process conducted here was entirely consistent with both California law and the FDCPA.  The complaint here does not derive from any conflict between these statutes.  Instead, the complaint alleges that the trustee under the Deed of Trust, ReconTrust, sent the debtor, Ho, a notice that was misleading and false because it listed an inaccurate amount due.  The cause of action that the FDCPA provides for this alleged misconduct does not conflict with California law.  If  California law does not provide such a remedy, the FDCPA cause of action simply supplements it, just as Congress intended.

## I.  The Definition of "Debt Collector"

I turn first to the arguments based on the definition of the phrase "debt collector."  The FDCPA provides, in relevant part, that "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money."  15 U.S.C. § 1692a(5).  "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  *Id.* § 1692a(3).  There is no dispute that Ho is obligated under a promissory note to pay the lender the purchase price of her property.  Section 1692a(6) defines the term "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." There is no dispute that ReconTrust seeks to enforce Ho's obligation to pay the money owed on the promissory note, and that it engages in such activities generally, with the degree of regularity described in section 1692a(6).

Nevertheless, the majority argues that, "[f]or the purposes of the FDCPA, the word 'debt' is synonymous with 'money.' Thus, ReconTrust would only be liable if it attempted to collect money from [the borrower] Ho."  Maj. Op. at 8 (citing 15 U.S.C. § 1692a(5)).  Because California law does not permit deficiency judgments in cases where there has been a nonjudicial foreclosure, no money will be collected directly from Ho.  Consequently, "[t]he object of a non-judicial foreclosure is to retake and resell the security, not to collect money." *Id*.  This suggestion cannot be right.

The object of a nonjudicial foreclosure is not to "retake and resell" the debtor's home.  The only way real property

that is foreclosed upon can be retaken by the creditor is to purchase it at a foreclosure sale. *See* Cal. Civ. Code § 2924g(a). Moreover, the purpose of a foreclosure proceeding *is* to collect money. Thus, a judicial decree of foreclosure directs "an officer of the court to sell the land at a public sale, pay the debt to the lender, and pay any amount exceeding the debt to the borrower. . . . Except for the power to foreclose privately, the deed of trust is treated in almost all significant respects as a mortgage." Dukeminier & Krier, *supra*, at 590–91; *see also Dikeman v. Jewel Gold Mining Co.*, 13 F.2d 118, 118 (9th Cir. 1926) ("Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security . . . ." (quoting *Flanders v. Aumack*, 51 P. 447, 450 (Or. 1897))).

The nonjudicial foreclosure process in California is illustrative. "Nonjudicial foreclosure proceedings must be conducted by auction in a fair and open manner, with the property sold to the highest bidder." *Dreyfuss v. Union Bank of Cal.*, 11 P.3d 383, 390 (Cal. 2000); *see also* Cal. Civ. Code § 2924g(a). The object of the nonjudicial foreclosure procedure is to sell the real property pledged as security thus raising money to retire all or part of the debt owed by the borrower pursuant to the promissory note. *See* A. James Casner & W. Barton Leach, *Cases and Text on Property* 737 (2d ed. 1969) ("To whatever extent foreclosure puts value into [the mortgagee's] hands, the debt of [the mortgagor] to [the mortgagee] is discharged . . . ."). Indeed, any excess funds raised over the amount owed by the borrower (and costs associated with the foreclosure) are paid to the borrower. *See* Cal. Civ. Code § 2924k; *see also* Dukeminier & Krier, *supra*, at 590.

The argument that ReconTrust cannot be a debt collector because it may not collect money directly from the debtor overlooks the disjunctive language of the definition of debt collector, as well as the inchoate conduct included in that definition. Thus, a debt collector is one who "attempts to collect, directly or indirectly, debts . . . owed or due another." 15 U.S.C. § 1692a(6). The nonjudicial foreclosure procedure accomplishes this in one of two alternative ways.

First, the creditor, through the trustee, may collect money *indirectly* through a nonjudicial foreclosure sale. The same is true of a judicial foreclosure, although it is not conducted by a trustee. The fact that the money may not come directly from the borrower does not alter the fact that any funds raised would come as a result of the elimination of the debtor's interest and equity in the property. This clearly constitutes the indirect collection of a debt, and the majority does not explain why not. Second, the money may be collected *directly*, because the language in the notices sent to the borrower may prompt her—perhaps the better word is scare her—to exercise her rights of reinstatement or redemption by paying the arrears on the promissory note at the risk losing the roof over her head. *See Yvanova*, 365 P.3d at 850 ("If . . . the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder.").[1] Or, as the majority aptly puts it, the notices tell the debtor "that she could avoid [this fate] by

---

[1] "The mortgagor's interest in the property is known as the 'equity,' a shortened form of 'equity of redemption' which also pays linguistic homage to the generations of chancellors who have been moved to protect debtors from overreaching moneylenders." Dukeminier & Krier, *supra*, at 589.

paying up." Maj. Op. at 12 n.5. The same is true of a complaint seeking a judicial foreclosure.[2]

Thus, in this case, ReconTrust commenced the foreclosure proceeding, "as an agent of the Beneficiary [the creditor] under a Deed of Trust," by the filing of a notice of default served on Ho warning that she was in default on the payments due on the promissory note she signed on June 23, 2007, in the amount of $548,000. She was told that the amount of the default was $22,782.68 and would increase until her account became current, that she may be able "to bring [her] account in good standing [and avoid foreclosure] by paying all of [her] past due payments plus permitted costs and expenses," and that she would "have only the legal right to stop the sale of [her] property by paying the entire amount demanded by [her] creditor." She was also told that, "[w]hile [her] property [was] in foreclosure, [she] still must pay other obligations (such as insurance and taxes) required by [her] note and deed of trust or mortgage."

The notice of trustee's sale again told Ho that she was "IN DEFAULT" and advised her that, "UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE." The next paragraph told

---

[2]    The principal difference between a judicial and a nonjudicial foreclosure is that in the latter, with some exception, *see Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640, 642–43 (N.D. 1980), a deficiency judgment against the debtor may be obtained for the difference between the money collected at the foreclosure sale and the amount of the debt still owed on the promissory note. Such an effort against the debtor in a nonjudicial foreclosure is precluded because forgiveness of the remainder of the debt is a tradeoff in return for "an inexpensive and efficient remedy against a defaulting borrower." *See Yvanova*, 365 P.3d at 850.

Ho that ReconTrust would "sell [her house] on 8/28/2009 at 01:00 PM, At the front entrance to the Pomona Superior Courts Building." Significantly, the notice of trustee's sale contained the following, in conformity with section 1692e(11): "RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose."

While the majority suggests that ReconTrust's description of itself does not necessarily establish that it was engaging in debt-collection activity, Maj. Op. at 13 n.7, the Second Circuit has held that a debtor receiving this letter cannot safely disregard it on that basis, *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 227 (2d Cir. 2015). Instead, "the Letter clearly announces itself an attempt to collect a debt, and its other text only emphasizes the plausibility and gravity of that announcement. We see no reason why we should not take it at its word . . . ." *Id.*; *see also McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014) (attaching significance to the fact that a law firm described itself as a debt collector in a letter to the debtor)*; Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012) (same). Indeed, in the present case, the notices may have succeeded in obtaining money from Ho directly because, as the majority observes, the loan service provider approved a loan modification agreement prior to the date of the foreclosure sale. Maj. Op. at 7 n.1. The modification, which would take effect upon the payment of $12,000, provided for a $36,000 increase in the amount of the mortgage and a reduction in the monthly interest payment.

The majority does not, and cannot, deny the effect of the language in the notices sent to Ho. Nor does it even address the language of section 1692a(6) that defines "debt collector"

as one who attempts to collect "indirectly" debts owed to another. Instead, it makes a number of arguments predicated on the assumption that the mortgage foreclosure process involves the enforcement of a security interest. Thus, it begins its defense of ReconTrust's *in terrorem* communications by arguing that, if those communications succeed in obtaining the payment of a debt, it is akin to the simple fear of having your car impounded because you had accumulated parking tickets. This fear, the majority suggests, "doesn't make the guy with the tow truck a debt collector." Maj. Op. at 9. I leave it to the reader to evaluate whether the activities of a trustee of a deed of trust, which I have described above, can fairly be analogized to those of a tow truck driver who simply pulls up to a car on the street and repossesses it.

Perhaps because the answer is obvious, the majority then argues that the FDCPA intended to exclude entities whose principal purpose is to enforce security interests, and because a nonjudicial foreclosure proceeding comes within the definition of enforcement of a security interest, ReconTrust is not a debt collector within the meaning of the FDCPA. Maj. Op. at 12–13. Moreover, for this reason, ReconTrust was entitled to engage in communications necessary to effectuate the enforcement of a security interest. *Id.* at 12. This argument fails for a number of reasons.

First, ReconTrust is a debt collector, because it directly or indirectly collects money owed by the debtor to the creditor. Under these circumstances, it is irrelevant that the nonjudicial process entailed in a mortgage foreclosure proceeding may have also constituted the enforcement of a security interest. *See Kaltenbach v. Richards*, 464 F.3d 524, 528–29 (5th Cir. 2006) ("[T]he entire FDCPA can apply to a party whose

principal business is enforcing security interests but who nevertheless fits § 1629a(6)'s general definition of a debt collector."). Second, the FDCPA expressly contains six exclusions from its definition of "debt collector" but does not exclude entities who enforce security interests. 15 U.S.C. §§ 1692a(6)(A)–(F). Moreover, section 1692a(6), which contains the definition of "debt collector" and which I repeat here with the additional language upon which the majority relies, does not support the argument that one who enforces a security interest—and more particularly, the obligation of a debtor to pay money owed pursuant to a promissory note through a foreclosure proceeding—does not come within the definition of debt collector. Specifically, section 1692a(6) provides that:

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . *For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.*

(Emphasis added). Section 1692f(6)—to which the last sentence, emphasized above, makes reference—proscribes "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as

collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

The majority argues that the last sentence of section 1692a(6), which subjects security enforcers to the foregoing proscriptions, "would be superfluous if all entities that enforce security interests were already included in the definition of debt collector for the purpose of the entire FDCPA." Maj. Op. at 11. In other words, what point would there be in saying that the term "debt collector" also includes enforcers of security interests if security enforcers were already included in the general definition? The answer is obvious. Not all entities that engage in the enforcement of security interests do so in the same way. *See, e.g.*, *Glazer*, 704 F.3d at 464. There are entities that enforce security interests yet who do not typically engage in activity that would also come within the definition of "debt collection." The tow truck driver to which the majority alludes is one example. *See* Maj. Op. at 9. Moreover, if they "attempt to collect, directly or indirectly, debts . . . owed or due another"—in the manner ReconTrust did here–they do not do so with sufficient regularity to bring them within the definition of "debt collector." *See Pflueger v. Auto Finance Group, Inc.*, No. CV–97–9499 CAS(CTX), 1999 WL 33740813, at *4–6 (C.D. Cal. Apr. 26, 1999).

Significantly, the concept of "dispossession or disablement of property" does not easily fit a mortgage foreclosure proceeding, and is more commonly associated with the taking of personal property. Because nonjudicial foreclosure proceedings do not involve the dispossession or disabling of personal property, the proscriptions contained in

section 1692f(6) do not apply to those proceedings. Thus, if the majority is correct, then it would follow that a trustee of a deed of trust could undertake any of the unfair and abusive conduct proscribed in the FDCPA, because it would not come within the definition of "debt collector," nor would it be a security enforcer dispossessing or disabling property.[3] Congress hardly could have intended such a result.

Indeed, another provision of the FDCPA provides compelling support for the proposition that mortgage foreclosures come within the definition of debt collection, even though they may involve security interests. Thus, the judicial venue clause, the purpose of which is to require that a foreclosure proceeding be filed in the place "most convenient and least expensive for the debtor," *Kaltenbach*, 464 F.3d at 528, provides that "[a]ny *debt collector* who brings any legal action on a debt against any consumer shall—(1) *in the case of an action to enforce an interest in real property securing the consumer's obligation*, bring such action only in a judicial district or similar legal entity in which such real property is located," 15 U.S.C. § 1692i(a)(1) (emphasis added).[4]

---

[3] The definitional section of the FDCPA does not contain a definition of the term "security enforcer." *See* 15 U.S.C. § 1692a. The meaning must therefore be derived from the manner in which the term is used, namely, one who dispossesses or disables personal property.

[4] Section 1692i(a)(2), permits any other action, including an action for a deficiency judgment, to be filed in the district "(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." Because the difference between the amount obtained at the foreclosure sale and the amount due on the promissory note cannot be known, an action for a deficiency judgment arising out of a judicial foreclosure proceeding cannot be commenced until after the foreclosure sale is over.

The clause is particularly significant for two reasons. First, Congress did not say, as one would expect it to have said under the analysis employed by the majority, that any security enforcer who brings a mortgage foreclosure proceeding must do so in the designated venue. Instead, its use of the term "any debt collector" demonstrates that Congress understood that a mortgage foreclosure proceeding—an action to enforce an interest in real property securing the debtor's obligation—constitutes debt collection within the meaning of the FDCPA. Indeed, if, as the majority suggests, mortgage foreclosure proceedings constitute the enforcement of a security interest and not debt collection, then the venue clause would be rendered meaningless, because security enforcers seeking a judicial foreclosure would not be subject to the limitation on venue contained in section 1692i(a)(1).

The majority argues that the venue clause "contemplates that a security enforcer can be a debt collector, but it offers no indication that an entity is a debt collector *because* it enforces a security interest." Maj. Op. at 11 n.4. I agree that an entity may not be a debt collector merely because it enforces a security interest. *See Glazer*, 704 F.3d at 463–64; *Piper*, 396 F.3d at 236. I rely on the venue clause because it demonstrates that Congress understood that mortgage foreclosure proceeding constitutes a unique way to enforce a security interest, and supports the broader proposition that a foreclosure proceeding meets the definition of debt collection. *Kaymark*, 783 F.3d at 179. Thus, the Third Circuit has observed that "[n]owhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of 'debt collection'

under the FDCPA, and it is even contemplated in various places in the statute." *Id.* (citing, inter alia, 15 U.S.C. § 1692i).

This interpretation is supported by the legislative history of the FDCPA. In particular, the Senate Report on the FDCPA noted that "the committee does not intend the definition to cover . . . *the collection of debts, such as mortgages and student loans, by persons who originated such loans*." S. Rep. No. 95-382, at 3 (1977) (emphasis added). This language strongly suggests a mortgage or deed of trust can be a debt, and an entity like ReconTrust can be a debt collector because it did not originate the loan to Ho. While I share the late Justice Scalia's lack of confidence in such legislative history, *see* Hon. Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 32–34 (Amy Gutmann ed. ,1997), I cite it here only because it is consistent with the language and structure of the FDCPA that I have discussed above, and because, accepting the majority's suggestion that the definition of debt collector is ambiguous, our precedents resort to this legislative history, *see Hernandez*, 2016 WL 3913445, at \*4; *see also Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerostructures Grp.*, 387 F.3d 1046, 1051–52 (9th Cir. 2004).

I come now to the last part of the argument of the majority that proceeds on the assumption that ReconTrust is a security enforcer and, as such, "must be able to maintain that status" when it does communicate with the debtor by taking "the statutorily required steps to conduct the trustee's sale." Maj. Op. at 12. This is another way of saying that California may override the protections afforded by the FDCPA by prescribing the steps necessary to commence a

foreclosure proceeding, even if those steps would otherwise qualify ReconTrust as a debt collector.

There is no support in the language of the FDCPA for this pronouncement. Indeed, we have held that a complaint served on a debtor is a communication subject to the FDCPA, *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031–32 (9th Cir. 2010), and there are any number of cases that have held that communications necessary to commence foreclosure proceedings, judicial or nonjudicial, may come within the definition of debt collection, *see Kaymark*, 783 F.3d at 176–78 (holding that a foreclosure complaint is a communication subject to the FDCPA); *Alaska Tr.*, 372 P.3d at 217–18 (explaining that a notice required to initiate foreclosure proceedings could "at the same time be an attempt to collect a debt"); *see also Romea*, 163 F.3d at 116 (holding that the fact that state law required a debt collector to send a letter to commence eviction proceedings was "wholly irrelevant to the requirements and applicability of the FDCPA").

Perhaps recognizing the force of the arguments in favor of holding that the FDCPA does apply to trustees of a deed of trust, the majority appears to acknowledge that a trustee could become a debt collector by doing something "*in addition* to the actions required to enforce a security interest." Maj. Op. at 12 n.5. The majority does not say what additional action a trustee of a deed of trust would have to take in order to make him a debt collector. Certainly, it could not mean additional egregious actions in which some debt collectors engage, such as banging on the debtor's door or calling her incessantly. Under the holding of the majority, a trustee engaged in conducting a nonjudicial foreclosure proceeding is not collecting a debt. Thus, the FDCPA would not prohibit

it from engaging in these activities. Moreover, the third amended complaint alleges that "defendant and/or its agents unlawfully trespassed [Ho's] property . . . by dispatching agents who entered upon the subject property, banging on doors in a gangster type fashion, posting false notices to let tenants on the premises know that Plaintiff [was] in loan default and demanding that plaintiff should call BAC, with intent to scare, intimidate, and harass plaintiff, and plaintiff's tenants."

Of course, the conduct prohibited by the FDCPA includes conduct that is far less egregious than banging on doors and calling debtors incessantly. Nevertheless, Congress regarded them as sufficiently problematic to warrant including them in the list of activities that constitute harassment or abuse, *see* 15 U.S.C. § 1692d, or are "unfair or unconscionable," *id.* § 1692f. Thus, among the activities that the FDCPA lists as abusive is "[t]he advertisement for sale of any debt to coerce payment of the debt." *Id.* § 1692d(4). And among the unfair or unconscionable means to attempt to collect the debt is "[c]ommunicating with a consumer regarding a debt by post card." *Id.* at § 1692f(7). As the Second Circuit has held, "that Congress cited the industry's worst practices when passing the FDCPA does not limit the statute's purview to those practices, when the text reaches well beyond. [The parties] provide[] no reason to believe that Congress did not intend the FDCPA to offer broad protection to debtors . . . ." *Hart*, 797 F.3d at 228.

Moreover, even if the service of the notices and their content were required by California law, the liability attached to ReconTrust's activity does not arise from either the service of the notices or their required script. Instead, it arises from the fact that the notices that "ReconTrust had sent [Ho] were

misleading and false because the amounts listed on them" reflected inaccurate amounts due. California did not require ReconTrust to provide false and misleading notices. The mere fact that California requires an otherwise accurate notice to be sent to commence a nonjudicial foreclosure proceeding should not relieve the trustee from complying with the FDCPA.

In sum, Congress has provided a definition of a debt collector. Once ReconTrust's activities brought it within that definition, it was a debt collector, as ReconTrust acknowledged in the notice of sale it sent to Ho in which it characterized itself as a debt collector seeking to enforce a debt. *See* 15 U.S.C. § 1692a(6). This conclusion is also consistent with the opinion of the Consumer Financial Protection Bureau ("CFPB"), which we solicited and which the majority rejects, Maj. Op. at 16 n.9, "that entities satisfying the general definition of 'debt collector' are subject to the entire [FDCPA]," Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Appellant and Reversal at 18 n.8, 2015 WL 4735787, at *18 n.8.

## II. The FDCPA Does Not Interfere with California's Arrangements for Nonjudicial Foreclosures

I turn now to the claim that, because the term "debt collector" is said to be ambiguous, it should not be construed in a manner that would frustrate ReconTrust's ability to comply with California's procedures for nonjudicial foreclosures. Maj. Op. at 14. Indeed, in this case, it is not disputed that ReconTrust complied in every respect with California law. Nevertheless, citing several alleged conflicts between the FDCPA and California foreclosure law, ReconTrust and its amici have warned that treating trustees

as debt collectors would "literally prevent [California's foreclosure] system from functioning." Brief of Amici Curiae United Trustee's Ass'n et al. at 4, 2015 WL 1020492, at *4. This overwrought statement is simply false. Indeed, this case demonstrates how readily the California foreclosure system can function alongside the FDCPA. Three circuits, covering twelve states, have held that foreclosure proceedings are debt collection under the FDCPA, *see Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461–63 (6th Cir. 2013); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376–77 (4th Cir. 2006); *see also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234–36 (3d Cir. 2005), along with the Supreme Courts of Alaska and Colorado. *See Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 213–216 (Alaska 2016); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 123–24 (Colo. 1992) (en banc). Neither ReconTrust nor its amici have provided any evidence that these holdings have had any effect—much less that the sky has fallen in—on the foreclosure laws of those states. Moreover, the argument ignores the fact that the FDCPA's preemption clause expressly leaves in place "the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of [the FDCPA], and then only to the extent of the inconsistency." 15 U.S.C. § 1692n. Indeed, it also contains a mechanism for the exemption of certain debt collection practices that do not precisely match those of the FDCPA. *See* 15 U.S.C. § 1692o.

I now proceed to address each of the provisions of the FDCPA that allegedly interfere with California's arrangements for conducting nonjudicial foreclosure proceedings. None of them have the effect that the majority attributes to them. I observe at the outset the majority does

not dispute that the first two alleged conflicts between California law and the FDCPA may be avoided "by consent between the parties to a mortgage deal." Maj. Op. at 18. Such consent was procured here. Nevertheless, the majority argues that "[t]he fact that parties may be able to draft their way around conflicts renders them conflicts no less. Relegating future parties to the uncertain process of adding contractual terms may itself upset a state's carefully drawn scheme of notice and disclosure; additional efforts or more complex terms are themselves costs of that conflict." *Id.* at 18. I do not understand to what the majority is referring when it speaks of an "uncertain process of adding contractual terms." The language of the Deed of Trust is not the result of the addition of terms to a bargained-for agreement. Instead, the Deed is a "take it or leave it" form to the terms of which the borrower must agree if he or she wants a loan. Thus, the pre-printed Deed of Trust, which is signed only by the borrower, describes itself as follows: "CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS."

Indeed, as I will show below, the alleged conflicts are, to borrow the Yiddish term, gornisht mit gornisht—nothing with nothing. This is particularly so with respect to the majority's invocation of the so-called "federalism canon," because in the two instances in which California law allegedly conflicts with the FDCPA, the net effect of the borrower's consent is to permit the foreclosure to go forward in the manner prescribed by California law. Thus, in the first instance, the debtor agrees to allow the trustee to announce the foreclosure sale in a newspaper, as well as mail the notices of default to various third parties, which is required by California law. Moreover, in the second instance, the debtor agrees to allow the trustee to mail the notices of default and sale directly to him or her,

as required by California law.  While the majority argues that
"[t]he point of the federalism canon isn't to resolve
ambiguities so that we can, with a little more effort, enjoy a
brackish mix of state and federal law," Maj. Op. at 18, this
"brackish mix" is exactly what Congress had in mind when
it drafted the preemption clause of the FDCPA to expressly
permit the application of both federal and state law.    I
provide some brief background detail in the discussion that
follows.

1.    While FDCPA prohibits debt collectors from
communicating with third parties without the debtor's
consent, California law mandates that trustees announce any
sale in a newspaper, as well as mail notices of default to
various third parties.  Maj. Op. at 15.  As the majority
acknowledges, debt collectors may communicate with third
parties once they have the debtor's consent.  *Id.* (citing 15
U.S.C. § 1692c(b)).  Here, Ho provided such consent by
signing the Deed of Trust, which stated that, if the lender
invoked its power of sale, the "Trustee shall cause this notice
[of sale] to be recorded in each county in which any part of
the Property is located.  Lender or Trustee shall mail copies
of the notice as prescribed by Applicable Law to Borrower
and to the other persons prescribed by Applicable Law."  The
effect of this was to permit ReconTrust to comply with the
California law mandating certain public disclosure of a
foreclosure sale.

2.  The majority also observes that, while the FDCPA
prohibits debt collectors from communicating directly with
debtors if the collector knows that the debtor has counsel,
under California law, a trustee must mail the notices of
default and sale to the borrower directly. Maj. Op. at 15. The
FDCPA, however, allows consumers to consent to direct

communication. 15 U.S.C. § 1692c(a). By signing the Deed of Trust, Ho consented to the "Lender or Trustee [mailing] copies of the notice as prescribed by [California] Law to Borrower."

3. Having disposed of the majority's concerns that these "complex terms" undermine the federalism canon, I now proceed to the remaining conflict between California law and the FDCPA relied upon by the majority. The majority warns that, if a debtor decided to dispute the debt pursuant to the FDCPA, the trustee would have to cease any debt collection activities until it verified the debt. Maj. Op. at 15. If such verification took more than ten days, the trustee would miss the statutory deadline for mailing the notice of default. *Id.* Moreover, if the verification took over a year, the trustee would have to restart the foreclosure process. *Id.*

This scenario is entirely far-fetched, because a debt collector could easily satisfy this verification requirement within ten days and thus avoid delaying the nonjudicial foreclosure process. Indeed, if it took longer, it would be the trustee's own fault. Specifically, we have "decline[d] to impose . . . a high threshold" on debt collectors attempting to verify disputed debts and have explained that, "[a]t the minimum, 'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173–74 (9th Cir. 2006) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)). Indeed, in an unpublished opinion, we recently affirmed a district court's ruling that a debt collector satisfied section 1692g(b) by sending a letter to the debtor that included the debtor's address, the date of the deed of trust, and the name and

address of the original creditor. *Zhang v. Countrywide Home Loans, Inc.*, 601 F. App'x 567, 567 (9th Cir. 2015) (unpublished), *aff'g* No. 11-cv-3475 (NC), 2012 WL 1245682, at *11 (N.D. Cal. Apr. 13, 2012). So much for the conflicts that the majority conjures.

In sum, none of the conflicts identified would stop the California foreclosure system from functioning. On the contrary, the FDCPA's preemption clause expressly preserves State law and avoids excluding compliance with it "except to the extent that those laws are inconsistent with any provision of [the FDCPA], and then only to the extent of the inconsistency." 15 U.S.C. § 1692n.[5] This makes all the more baffling the majority's reliance on *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016) for the proposition that "the Supreme Court [has] instructed us that the FDCPA should not be interpreted to interfere with state law unless Congress clearly intended to displace that law." Maj. Op. at 16. Congress did just that in the preemption clause. This consideration aside, the *Sheriff* opinion has no bearing on the issue presented in this case.

In *Sheriff*, the Attorney General of Ohio was vested with the authority to collect debts owed to state-owned agencies and instrumentalities. 136 S. Ct. at 1598–1599. Carrying out this responsibility, the Attorney General appointed private attorneys as independent contractors, naming them special counsel to act on his behalf. *Id.* at 1599. Consistent with the

---

[5] The CFBP does not concede, as the majority suggests, "a conflict may exist between state and federal law." Maj. Op. at 16. Instead, citing to the FDCPA's preemption clause, the CFPB explained, "[t]hat a conflict may exist between state and federal law is no basis for state law to trump or somehow excuse compliance with federal law." Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Appellant and Reversal at 14, 2015 WL 4735787, at *14.

direction of the Attorney General, one of the law firms sent the plaintiff debt-collection letters on the Attorney General's letterhead. *Id.* The signature block of each of the letters had the name and address of the signatory and the designation "special" or "outside" counsel to the Attorney General. *Id.* Each letter also listed the sender as a debt collector seeking payment for debts to a state institution. *Id.* The Supreme Court held that the use of this letterhead did not offend the FDCPA's general prohibition against false or misleading representations. *Id.* at 1600–01. Nor did it falsely represent that communication was "'authorized, issued, or approved' by a State," because "the Attorney General authorized— indeed required—special counsel to use his letterhead in sending debt collection communications." *Id.* at 1601 (quoting 15 U.S.C. §1692e(9)). And finally it held that special counsel, in sending letters on the Attorney General's letter head, did not violate the provision prohibiting debt collectors from collecting in a name other than their true name. *Id.* at 1601–02. "Far from misrepresenting special counsel's identity, letters sent by special counsel accurately identif[ied] the office primarily responsible for collection of the debt (the Attorney General), special counsel's affiliation with that office, and the address (special counsel's law firm) to which payment should be sent." *Id.* at 1602.

After concluding that there was no violation of the FDCPA, the Supreme Court noted a "federalism concern," namely, that "Ohio's enforcement of its civil code—by collecting money owed to it—[is] a core sovereign function." *Id.* (alteration in original) (citation and internal quotation marks omitted). Because the special counsel the Attorney General appointed to assist him in collecting money owed to the state did not engage in conduct violating the FDCPA, there was "no cause, in this case, to construe federal law in a

manner that interferes with 'States' arrangements for conducting their own governments.'" *Id.* (quoting *Nixon v. Mo. Mun. League*, 541 U.S. 125, 140 (2004)).    The application of the provisions of the FDCPA to debt collectors who are not acting on behalf of the state does not involve the slightest interference with the core sovereign functions of the State of California.

Finally, the FDCPA provides a method for resolving conflicts with state law that the majority ignores.  Section 1692o states that the CFPB "shall by regulation exempt from the requirements of this subchapter any class of debt collection practices within any State if the [CFPB] determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement."  The Second Circuit discussed section 1692o in *Romea*.  There, a defendant law firm sent a form letter to a plaintiff-debtor pursuant to state law, demanding that she pay her back rent.  *Romea*, 163 F.3d at 113.  In finding that the defendant was a debt collector, the Second Circuit cited to an older version of section 1692o, which granted the Federal Trade Commission the authority to provide exemptions, to explain that, "if the protections afforded tenants under New York's Article 7 process do result in 'requirements substantially similar to those imposed by [the FDCPA],' then New York may petition the Federal Trade Commission to promulgate regulations that exempt § 711 notices from the FDCPA."  *Id.* at 118 n. 11 (alteration in original); *see also*  FTC Notice of Maine Exemption From The Fair Debt Collection Practices Act, 60 Fed. Reg. 66972, 66973 (Dec. 27, 1995) (granting Maine's request for an exemption from certain provisions of the FDCPA for certain debt collection practices because "the level of protection to

consumers under the Maine Act is substantially equivalent to that provided in the FDCPA"). Rather than asking this Court to adopt an unnatural reading of the term "debt collector," ReconTrust and its amici should ask California to petition the CFPB for an exemption to the statute.

In sum, the position of the majority is that, because the phrase "debt collector" is ambiguous, we should refuse to construe it in a manner that conflicts with California's arrangements for conducting nonjudicial foreclosures. While my reading of the phrase differs from that of the majority, even if the majority is correct, the provisions of the FDCPA do not interfere with the operation of nonjudicial foreclosure proceedings in California. Because the majority applies California law in a way that overrides the arrangements that Congress has made for the protection of debtors, I respectfully dissent from the affirmance of the judgment dismissing the FDCPA claim. I concur in the remand to the district court for consideration of Ho's Truth in Lending Act rescission cause of action.