FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMOTHY BARNES,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>ROUTH CRABTREE OLSEN PC; JOHN THOMAS, OSB# 024691; SHAYDA Z. LE, OSB# 121547; FEDERAL NATIONAL MORTGAGE ASSOCIATION; SETERUS, INC.; JANAYA CARTER, OSB# 032830; JOHN AND JANE DOES, 1–10,<br>*Defendants-Appellees.* | No. 16-35418<br><br>D.C. No.<br>3:15-cv-01001-BR<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted May 14, 2020
Portland, Oregon

Filed June 30, 2020

Before: Jay S. Bybee and Lawrence J. VanDyke, Circuit
Judges, and Vince Chhabria,[*] District Judge.

Opinion by Judge Chhabria

---

    [*] The Honorable Vince Chhabria, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY**

### Fair Debt Collection Practices Act

The panel affirmed the district court's dismissal of an action under the Fair Debt Collection Practices Act concerning a judicial foreclosure proceeding in Oregon.

The panel held that if a foreclosure plaintiff seeks not only to foreclose on the property but also to recover the remainder of the debt through a deficiency judgment, then the plaintiff is attempting to collect a debt within the meaning of the FDCPA. But if the plaintiff is simply enforcing a security interest by retaking or forcing a sale of the property, without regard to any additional debt that may be owed, then the FDCPA does not apply. Here, appellant pleaded no conduct by the defendants beyond the filing of a foreclosure complaint and actions to effectuate that proceeding. Accordingly, the district court properly granted defendants' motion to dismiss.

## COUNSEL

Matthew A. Carvalho (argued), Yarmuth LLP, Seattle, Washington, to Plaintiff-Appellant.

Janet M. Schroer (argued), Hart Wagner LLP, Portland, Oregon, for Defendants-Appellees Routh Crabtree Olsen PC, John Thomas, Shayda Z. Le, and Janaya Carter.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Lance E. Olsen (argued), McCarthy Holthus LLP, Seattle, Washington, for Defendants-Appellees Federal National Mortgage Association and Seterus, Inc.

**OPINION**

CHHABRIA, District Judge:

This case presents a recurring issue: whether and when the enforcement of a security interest in property triggers the prohibitions on unfair debt-collection practices set forth in the Fair Debt Collection Practices Act (FDCPA). This most recent installment centers on a judicial foreclosure proceeding in Oregon.

Although some courts have placed weight on the distinction between judicial and non-judicial foreclosure in deciding whether the FDCPA applies to the enforcement of a security interest in property, we conclude that the Act's applicability turns not on the foreclosure forum but on whether the foreclosure plaintiff seeks to recover any debt beyond the proceeds from the sale of the foreclosed property. For example, if the plaintiff seeks not only to foreclose on the property but also to recover the remainder of the debt through a deficiency judgment, the plaintiff is attempting to collect a debt within the meaning of the FDCPA. But if the plaintiff is simply enforcing a security interest by retaking or forcing a sale of the property, without regard to any additional debt that may be owed, the Act does not apply.

The defendants in this FDCPA case (the foreclosure plaintiff and its attorneys) sought only to force a sheriff's sale at which interested buyers could bid on the foreclosed property. Indeed, any effort to recover money from the debtor would have been fruitless because Oregon law

precludes deficiency judgments when a creditor judicially forecloses a residential deed of trust. Therefore, their pursuit of judicial foreclosure was not a form of "debt collection" regulated by the FDCPA.

I

Timothy Barnes, the plaintiff in this case, is a repeat visitor to this court. In 2007, he took out a loan of $378,250 from Chase Bank to satisfy a divorce judgment and to repurchase his home from his ex-wife. *See Barnes v. Chase Home Finance, LLC*, 934 F.3d 901, 905 (9th Cir. 2019). He also granted Chase Bank a deed of trust on his home as security for the note. In September 2010, Barnes ceased his loan payments and soon after filed a federal lawsuit seeking damages and rescission of the loan under the Truth in Lending Act. The district court rejected Barnes' claims, a decision that we recently affirmed on appeal. *See id.* at 909.

Meanwhile, the Federal National Mortgage Association—better known by its more personable nickname, Fannie Mae—acquired the note and the deed of trust from Chase Bank. Fannie Mae subsequently initiated a proceeding in the Circuit Court for the County of Polk to foreclose the deed of trust on Barnes' home. The state court dismissed the foreclosure action without prejudice, reasoning that the pending Truth in Lending Act action was duplicative. The Oregon Court of Appeals vacated this decision, *Federal National Mortgage Ass'n v. United States*, 380 P.3d 1186, 1190 (Or. Ct. App. 2016), but Fannie Mae has not yet renewed its attempt to foreclose the deed of trust.

Not satisfied with merely forestalling the foreclosure action, Barnes went on the offensive again in federal court. He filed a pro se complaint alleging that Fannie Mae pursued judicial foreclosure without lawful authority, neglected in

the foreclosure complaint to make consumer disclosures required by the FDCPA, and committed a series of misrepresentations during that proceeding. He also sued Fannie Mae's loan servicer, the law firm that represented Fannie Mae in the foreclosure proceeding, and the firm's attorneys. According to Barnes, the defendants violated the FDCPA and the parallel provision of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.639, while engaging in a civil conspiracy to boot.

After affording Barnes an opportunity to amend his complaint, the district court dismissed it with prejudice for failure to state a claim. The FDCPA claim could not proceed, the district court concluded, for a fundamental reason—namely, that none of the defendants had engaged in debt collection by initiating the judicial foreclosure proceeding. The court further held that this defect required dismissal of the state-law claims. Oregon law provides that compliance with the FDCPA constitutes compliance with the Unlawful Trade Practices Act. *See* Or. Rev. Stat. § 646.643. And under Oregon law, civil conspiracy is a theory of joint liability that depends on an underlying civil violation. *Granewich v. Harding*, 985 P.2d 788, 792–93 (Or. 1999).

We initially affirmed the dismissal of Barnes' complaint for essentially the same reasons given by district court. 719 F. App'x 700 (9th Cir. 2018). But upon receipt of Barnes' petition for rehearing, we ordered supplemental briefing to discuss the effect (if any) of the Supreme Court's intervening decision in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). We also appointed pro bono appellate counsel to represent Barnes.

## II

All parties agree that none of Barnes' claims can proceed unless at least one of the defendants is a "debt collector" as that term is defined by the FDCPA. Most of the Act's prohibitions apply only to debt collectors while collecting or attempting to collect a debt; this general rule holds true for the violations claimed by Barnes. *See* 15 U.S.C. §§ 1692e–g. As we already mentioned, the defendants sought to foreclose a deed of trust on Barnes' home in state court. A deed of trust, like a mortgage, grants a creditor (in the event of default) the remedy of foreclosure—the process by which the property is sold and its proceeds distributed. The crux of the parties' dispute is whether the defendants' pursuit of judicial foreclosure was a form of debt collection.

## A

Our cases explain that a debt collector is a person who engages in "the collection of a money debt" on behalf of a third party. *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964, 970 (9th Cir. 2017). To trace this understanding to the statutory text, start at square one. A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Simplified somewhat, a "debt" is a consumer's obligation to "pay money." *See Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017). The primary definition of a "debt collector," in turn, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Because the debt must be owed or due "another," an entity that collects a debt owed *itself*—even a debt acquired after default—does not qualify under this definition. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017).[1]

The key takeaway from these statutory definitions is that the FDCPA regulates people or entities whose principal business is collecting, or who regularly collect, money owed by a consumer to a third party. When (as here) a consumer defaults on a home loan, that default opens the door to an action on the note obliging the consumer to pay back the loan. Fannie Mae could have—but did not—take this approach. Only personal liability would be at stake in that hypothetical lawsuit: Barnes borrowed nearly $400,000 from Chase Bank; he stopped paying years ago; and he owes Chase Bank's successor, Fannie Mae, the balance plus interest (which was more than $530,000 as of 2014). A third party—typically a loan servicer or law firm—that pursues collection on the note is engaged in debt collection, and the FDCPA regulates this activity whether the attempt to collect money is made (for example) by phone call, demand letter, or court complaint. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

---

[1] Citing *Henson* and pointing to the complaint's allegation that Fannie Mae acquired the debt after default but before filing the foreclosure complaint, Fannie Mae argues that (at most) it attempted to collect a debt owed itself. Fannie Mae did not, however, present a *Henson*-type argument to the district court despite similar circuit precedent on the books at the time. *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013). In light of our resolution of the principal issue raised on appeal, we need not rule on the argument or grapple with forfeiture.

In contrast to an action on the note, the enforcement of a security interest does not entail an attempt to collect money from the debtor. To be sure, the receipt of a foreclosure complaint can be a strong incentive for a borrower to halt the foreclosure by paying his outstanding debt to the lender. *See* Or. Rev. Stat. § 88.100; *see also Ho*, 858 F.3d at 572. But courts have long recognized the "very palpable distinction" between security interests and the debts they secure. *Woodson v. Murdock*, 89 U.S. (22 Wall.) 351, 370 (1874); *see, e.g.*, *Long v. Bullard*, 117 U.S. 617, 621 (1886). The respective rights and obligations are related yet distinct. While the deed of trust creates a lien on the property to secure the creditor's right to repayment, the note makes the debtor personally liable for loan. *See Brandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 305, 314 (Or. 2013). Consider, for instance, the repo man who tows a car subject to a security agreement, thereby exercising the creditor's right to retake the property, without attempting to collect on the defaulted loan. *See Obduskey*, 139 S. Ct. at 1038. Foreclosure is the analogous procedure for repossessing real property. As we have explained, the remedy of foreclosure authorizes a creditor "to retake and resell the security, not to collect money from the borrower." *Ho*, 858 F.3d at 571.

The difference between security-interest enforcement and debt collection is underscored by the FDCPA's expanded definition of "debt collector" in a limited context not applicable here. *See Obduskey*, 139 S. Ct. at 1037. Recall that the Act primarily defines a debt collector as someone who uses commerce to collect money debts owed to another. 15 U.S.C. § 1692a(6). In addition, this statutory definition provides that the term "debt collector" "includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," § 1692a(6), but only for

purposes of the prohibition on "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" absent lawful authority and a present intention to take possession, § 1692f(6). This limited-purpose definition, which governs a discrete factual scenario involving the enforcement of a security interest, reinforces that the primary definition of debt collector does not include security-interest enforcement.

Rather than focusing on the distinction between security-interest enforcement and collecting money, Barnes asserts that the crucial distinction is between judicial and non-judicial foreclosure. As he points out, *Obduskey* and *Ho* held that two non-judicial foreclosure proceedings did not involve debt collection, while another case, *McNair v. Maxwell & Morgan PC*, 893 F.3d 680 (9th Cir. 2018), held that a judicial foreclosure proceeding did involve debt collection. The Supreme Court, moreover, reserved the question "whether those who judicially enforce mortgages fall within the scope of the primary definition." *Obduskey*, 139 S. Ct. at 1039. Perhaps for these reasons, some district courts have treated judicial foreclosure categorically as a form of debt collection. *See, e.g.*, *Smith v. Bank of New York Mellon*, 2019 WL 2994695, at *5 (W.D. Wash. July 9, 2019).

We do not agree that, as a categorical matter, a person who initiates a judicial foreclosure proceeding is attempting to collect a debt. Our cases make clear that a plaintiff must identify something beyond the mere enforcement of a security interest to establish that the defendants are acting as debt collectors subject to the FDCPA's broad code of conduct. *See Ho*, 858 F.3d at 573. That additional debt-collection ingredient can be present for judicial foreclosure, provided that state law permits a creditor to recover money

from the debtor after foreclosure if the property sells for less than the debt. *Cf. Dowers*, 852 F.3d at 970 n.2. That remedy, called a deficiency judgment, is often available in judicial foreclosure proceedings (but typically not in non-judicial proceedings). *See Obduskey*, 139 S. Ct. at 1034. Because Arizona authorizes deficiency judgments as part of judicial foreclosure, we accordingly held in *McNair* that the filing of a foreclosure writ in Arizona can qualify as debt collection. 893 F.3d at 683; *see also Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 83 (2d Cir. 2018) (reaching same conclusion for judicial foreclosure under New York law). But unless a deficiency judgment is on the table in the proceeding, a person judicially enforcing a deed of trust is seeking only the return or sale of the security, not to collect a debt.

Nor, contrary to Barnes' argument, does the FDCPA's venue provision compel the conclusion that judicial foreclosure is an across-the-board form of debt collection. The Act directs "[a]ny debt collector who brings any legal action on a debt against any consumer" to file "an action to enforce an interest in real property securing the consumer's obligation" in "a judicial district or similar legal entity in which such real property is located." 15 U.S.C. § 1692i(a)(1). Because this provision "does nothing to alter the definition of a debt collector," *Obduskey*, 139 S. Ct. at 1039, Barnes' reliance on § 1692i only begs the question whether this particular action was filed by a debt collector. Sometimes a foreclosure proceeding will involve debt collection, such as when the plaintiff in that action seeks a deficiency judgment, and in that instance the FDCPA prescribes the appropriate venue. *See, e.g.*, *McNair*, 893 F.3d at 683. But the venue provision applies by its own terms only to actions brought by debt collectors. This requirement is not satisfied when the proceeding merely involves enforcement

of a security interest in property unless the person "qualifies as a debt collector based on *other* activities." *Obduskey*, 139 S. Ct. at 1039.

Speaking of other activities beyond filing and maintaining an action, a person who enforces a security interest may take "antecedent steps required under state law" to that end—for example, providing the debtor with notice that failure to repay could lead to the loss of one's home. *Id.* Or as we have put it, "actions taken to facilitate" the enforcement of a security interest, "such as sending the notice of default and notice of sale," are deemed to "fall[ ] under the umbrella of 'enforcement of a security interest.'" *Ho*, 858 F.3d at 572–73. That is not to say that the filing of a foreclosure complaint grants "blanket immunity" to engage in abusive debt-collection practices. *Obduskey*, 139 S. Ct. at 1040. Quite to the contrary, a person who engages in debt collection before, during, or after the judicial foreclosure proceeding is subject to the full panoply of FDCPA prohibitions. But the Act kicks in only once a person does "something *in addition* to the actions required to enforce a security interest." *Ho*, 858 F.3d at 573 n.5.

B

Returning now to the specifics of this case, Oregon strictly circumscribes the availability of a deficiency judgment when a person judicially enforces a residential deed of trust. State law provides that "a judgment to foreclose a residential trust deed . . . may not include a money award for the amount of the debt against the grantor." Or. Rev. Stat. § 86.797(2). This provision, formerly codified at § 86.770(2), "prohibits deficiency judgments regardless whether the creditor forecloses judicially or through a trustee sale." *Connelly v. Derwinski*, 961 F.2d 129, 131 (9th Cir. 1992). Judicial foreclosure in Oregon "extinguishes the

entire debt even if it results in a recovery of less than the amount of the debt." *Ho*, 858 F.3d at 571–72; *see Banteir v. Harrison*, 485 P.2d 1073, 1075 (Or. 1971).

Barnes contends that Fannie Mae crossed the line into debt collection by including in its foreclosure complaint a request for a money award—specifically, for the "unpaid principal balance," "accrued unpaid interest," and additional interest "to accrue during the pendency of this action." At first glance, this fact seems helpful to Barnes. But upon closer inspection, the demand merely reflected a quirky pleading requirement imposed by Oregon law—one that bore no relation to the actual relief sought by the plaintiff and that has since been altered to square with the realities of judicial foreclosure in the State. *Compare* Or. Rev. Stat. § 88.010(1) (2014) *with* § 88.010(1) (2020). The requested "money award" served simply to identify the amount of the debt secured by the property, which authorized a sheriff's sale to discharge that liability in the same manner as for a typical judgment debtor. § 18.862(1) (2014); *see also* §§ 18.860(1)(a), 88.106. So that the form of the procedure better tracks the substance of the proceeding, Oregon recently eliminated this prerequisite to foreclosure, and now a foreclosure plaintiff must instead file "a declaration of the amount of the debt that the lien secures." § 88.010(1)(a); *see also* § 18.862(1).[2]

---

[2] By identifying the amount owed, the request for a money award can redound to the benefit of the debtor, who may receive the leftover proceeds if the purchase price at the sheriff's sale exceeds the money award. Or. Rev. Stat. § 18.950(4); *see also* § 86.794(4) (establishing priority for proceeds of non-judicial foreclosure). The foreclosure plaintiff can also "credit bid" at the sale of the property "using the debt it is owed to offset the purchase price." *Private Capital Group, LLC v. Harris*, 363 P.3d 502, 510 (Or. Ct. App. 2015) (internal quotation marks

Thus, both before and after this amendment, the requirement that the plaintiff identify the amount owed fulfills a procedural function in the foreclosure scheme by calculating the debt secured by the residential deed of trust. But in no event would a money award have been enforceable against Barnes because Oregon's anti-deficiency provision extinguishes the debtor's personal liability upon judicial foreclosure of a residential deed of trust. § 86.797(2).

Beyond Fannie Mae's compliance with the then-existing formality of requesting a money award in the complaint, Barnes did not allege any actions by the defendants that could arguably constitute debt collection. Barnes speculates that Fannie Mae could have abandoned judicial foreclosure in favor of an action on the note. *See Barclaysamerican/Financial, Inc. v. Boone*, 773 P.2d 1338, 1339 (Or. Ct. App. 1989); *see also* Or. Rev. Stat. § 88.040. Yet the hypothetical possibility that a person may change course and pursue a different remedy down the road is not enough to trigger the FDCPA. Indeed, in *Obduskey*, the Supreme Court held that Colorado's non-judicial foreclosure scheme was not a form of debt collection even though the creditor can recoup any deficiency by filing a subsequent action, meaning that even if the foreclosure sale went through, the debtor was still exposed to personal liability for the remainder of the debt. 139 S. Ct. at 1034.

Finally, although Fannie Mae already has text, precedent, and history on its side, it bears emphasizing that foreclosure is a traditional domain of state authority. *See Ho*, 858 F.3d at 576. We ordinarily demand a clearer statement

---

omitted); *see* Or. Rev. Stat. § 18.936(1)(c). And finally, the debtor can halt the sheriff's sale by paying the amount owed in the judgment. § 88.100.

from Congress before we will conclude that federal legislation scrambles "the usual constitutional balance of federal and state powers." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). This background principle guides our interpretation of the FDCPA no less than any other federal statute. *See Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016). In *Obduskey*, the Court relied in part on the federalism implications of characterizing non-judicial foreclosure as debt collection. 139 S. Ct. at 1037. The potential for federal-state conflict is even more fraught for judicial foreclosure, which is administered by state judges. *Cf. Gregory*, 501 U.S. at 460. Absent a situation where a plaintiff is permitted to, and does, use a judicial proceeding as a vehicle for debt collection in addition to foreclosure, we are reluctant to construe the FDCPA in a manner that interferes with state judicial procedures for enforcing security interests in real property. *Cf. McNair*, 893 F.3d at 683.

*          *          *

A judicial foreclosure proceeding is not a form of debt collection when the proceeding does not include a request for a deficiency judgment or some other effort to recover the remaining debt. Barnes pleaded no conduct by the defendants beyond the filing of a foreclosure complaint and actions to effectuate that proceeding. Accordingly, the district court properly granted the motion to dismiss.

**AFFIRMED.**