[Cite as *FV-I, Inc., In Trust for Morgan Stanley Mtge. Capital Holdings, L.L.C. v. Townsend-Young*, 2020-Ohio-5184.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

FV-I, INC., IN TRUST FOR MORGAN
STANLEY MORTGAGE CAPITAL
HOLDINGS L.L.C., ET AL.,                          :

      Plaintiffs-Appellees,                     :

                                               No. 109191

      v.                                        :

PRINCESS TOWNSEND-YOUNG,
ET AL.,                                           :

      Defendants-Appellants.                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 5, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-873121

---

### *Appearances:*

The Misra Law Firm, L.L.C., and Anand N. Misra; Robert
S. Belovich, *for appellants.*

Mayle L.L.C., and Andrew R. Mayle; K & L Gates, L.L.P.,
and Peter A. Talevich (pro hac vice), *for appellee* Saxon
Mortgage Services, Inc.

McGlinchey Stafford, Bryan T. Kostura, and Stefanie L.
Deka, *for appellee* Specialized Loan Servicing, L.L.C.

Elfvin, Klingshirn, Royer & Torch, L.L.C., Christina M.

Royer, and Stuart G. Torch.
Hinshaw & Culbertson, L.L.P., and Jennifer W. Weller (pro hac vice), *for appellee* Anselmo Lindberg Oliver L.L.C. and Susana E. Lykins.

LARRY A. JONES, SR., P.J.:

{¶ 1} Defendants-appellants, Princess Townsend-Young and Willie Young (collectively referred to as the "Youngs"), appeal the trial court's decision to grant summary judgment in favor of plaintiffs-appellees, FV-I, Inc. in Trust for Morgan Stanley Mortgage Capital Holdings L.L.C. ("FV-I"), Specialized Loan Servicing L.L.C. ("SLS"), Anselmo Lindberg L.L.C. ("Anselmo"), Susana Lykins ("Lykins"), and Saxon Mortgage Services, Inc. ("Saxon") (collectively referred to as "appellees"). For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} In March 2007, the Youngs entered into a loan with Accredited Home Lenders, Inc. in the amount of $92,700 for the purchase of a house located on Maple Heights Boulevard in Maple Heights, Ohio. The loan was evidenced by a note, which was endorsed in blank, and a mortgage executed by the Youngs on the property. The monthly payment of principal and interest was $847.97 with an adjustable interest rate starting at 10.5 percent.

{¶ 3} The original mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), assigned the mortgage to Saxon ("first assignment"). The assignment was recorded with the Cuyahoga County Recorder on April 29, 2008.

{¶ 4} The Youngs did not make their monthly payments, and Saxon filed a complaint for foreclosure that was dismissed after the parties agreed on a loan

modification agreement. *See Saxon Mtge. Servs., Inc. v. Young,* Cuyahoga C.P. No. CV-08-654688.

{¶ 5} The Youngs defaulted on the modified loan payments and filed for bankruptcy in 2010. Their debt on the loan was discharged in bankruptcy.

{¶ 6} Saxon initially serviced the Youngs' loan and did so until January 2012, when servicing on the Youngs' loan was transferred from Saxon to SLS; the loan was not in default when it was transferred to SLS.

{¶ 7} On February 18, 2015, the mortgage was assigned from Saxon to FV-I ("second assignment") and recorded with the Cuyahoga County Recorder on March 9, 2015. SLS was the servicer for FV-I.

{¶ 8} SLS and FV-I entered into a loan modification with the Youngs that lowered their monthly payments to $168.71 and gave them other favorable terms. Thereafter, the Youngs fell behind on their monthly mortgage payments. The Youngs were sent a notice of default but were unable to cure the default.

{¶ 9} On December 31, 2016, FV-I filed a complaint for foreclosure that sought $44,802.77 at a fixed interest rate of 3.25% per year from March 1, 2016, plus the noninterest-bearing deferred amount of $19,409.07, late charges, and any amounts advanced for real estate taxes, hazard insurance premiums, or property protection. Because of the Youngs' bankruptcy discharges, the complaint only sought to foreclose the mortgage and did not seek a personal money judgment against the Youngs. At the time the complaint was filed, FV-I averred it was in physical possession of the original note with the allonge endorsed in blank.

{¶ 10} The case was assigned to a magistrate. The Youngs counterclaimed against the appellees, alleging violations of the Fair Debt Consumers Protection Act ("FDCPA"), and common law claims for fraud, abuse of process, and civil conspiracy. The Youngs also sought to bring class claims against the appellees premised upon the alleged creation and use of falsified documents in foreclosure cases. The trial court decided that the class claims would be held in abeyance until after summary judgment briefing.

{¶ 11} The appellees moved for summary judgment.[1] The magistrate issued a decision granting summary judgment to Saxon, finding that the Youngs' claims against Saxon relied solely on the second assignment and the Youngs did not have standing to challenge the validity of the assignments as to Saxon.

{¶ 12} The Youngs filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision. The trial court handled the remaining motions for summary judgment and found that summary judgment was proper as to the remaining parties — FV-I, SLS, Anselmo, and Lykins; dismissed the Youngs' counterclaims including their class claims; and granted a judgment of foreclosure to FV-I.

{¶ 13} The Youngs filed a timely notice of appeal and raise the following assignments of error for our review:

I. The trial court committed prejudicial error in granting summary judgment on plaintiffs' complaint.

---

[1]Saxon filed a motion for summary judgment, FV-I and SLS filed a joint motion for summary judgment, and Anselmo and Lykins filed a joint motion for summary judgment.

II.  The trial court committed prejudicial error in granting summary judgment on the Youngs' counterclaims.[2]

III.  The trial court committed prejudicial error in granting summary judgment on [the Youngs'] class claims.

{¶ 14}  Further facts will be discussed under the assignments of error.

## Summary Judgment

{¶ 15}  In the first assignment of error, the Youngs claim that the trial court erred in granting summary judgment.

{¶ 16}  Appellate review of granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

{¶ 17}  In a foreclosure action, the plaintiff is required to prove (1) that it was either the holder of the note and mortgage or a party entitled to enforce those instruments; (2) the chain of assignments and transfers; (3) that the mortgagor was in default under the terms of the loan; (4) that all conditions had been met; and (5) the amount due.  *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 62.

{¶ 18}  The crux of the Youngs' argument is that the signatures on the first and second assignments were unauthorized and fraudulent and, therefore, FV-I

---

[2]The Youngs are not appealing the trial court's decision to grant summary judgment on their claim for abuse of process.

cannot demonstrate that it had standing to file a foreclosure action.  The Youngs further argue that FV-I was neither a holder of the note nor entitled to enforce the note.

{¶ 19} The Youngs make several arguments in support of their claim that the trial court erred in granting summary judgment.  The Youngs argue that there are three competing allonges in evidence in this case, which create an issue of fact as to whether FV-I is the entity that is entitled to enforce the note.  The Youngs argue that the authenticity of the signatures is suspect, there is a "hole" in the chain of possession of the note, and the evidence submitted by FV-I in support of its summary judgment is lacking.  The Youngs contend that Laura Hescott ("Hescott"), who signed the first assignment for MERS, averred that she was not employed by MERS and therefore did not have the authority to complete the assignment from MERS from Saxon.

{¶ 20} It is well-settled in this district "'that a mortgagor lacks standing to challenge the assignment of his mortgage directly if the mortgagor is neither a party to, nor a third-party beneficiary of, the assignment contract.'"  *United States Bank Natl. Assn. v. Robinson*, 8th Dist. Cuyahoga No. 108526, 2020-Ohio-32, ¶ 19, quoting *Bank of New York Mellon v. Froimson*, 8th Dist. Cuyahoga No. 99443, 2013-Ohio-5574, ¶ 17, citing *Bank of New York Mellon Trust Co., N.A. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 35.  This is because "the assignment does not alter the borrower's obligations under the note or mortgage." *Deutsche Bank Trust Co. v. Jones*, 2018-Ohio-587, 107 N.E.3d 117, ¶ 30 (8th Dist.).

{¶ 21} Here, the Youngs are not parties to nor third-party beneficiaries of either the first or second assignment and the assignments do not alter any of the Youngs' obligations. Similar to *Robinson*, "'the default exposed [them] to the foreclosure action regardless of the identity of the plaintiff who may prosecute such action.'" *Robinson* at ¶ 20, quoting *Jones* at ¶ 31.

{¶ 22} While the Youngs attempt to create standing by alleging that the assignments were fraudulent, at oral argument on this matter, counsel for the Youngs insisted they were not challenging the assignments. Nevertheless, on appeal, the Youngs argue that Hescott's affidavit stating that she was not an "employee" at MERS at the time she executed the documents assigning the loan to Saxon created an issue of fact as to whether the assignments were valid. We are not persuaded by this argument.

{¶ 23} The Youngs presented an affidavit from Hescott, filed in a nonrelated lawsuit, where she stated she was not an "employee" of MERS at the time in question. However, Hescott never disputed that she was an officer of MERS; at the time at issue, her title was "Vice President of Mortgage Electronic Registrations Systems, Inc." Moreover, under Ohio law, MERS had the authority to assign a mortgage when that mortgage designated MERS as both nominee and mortgagee. *See Robinson*, 8th Dist. Cuyahoga No. 108526, 2020-Ohio-32, ¶ 24, and *Bank of New York Mellon v. Argo*, 5th Dist. Richland No. 14CA59, 2015-Ohio-268, ¶ 19 (both cases holding the right and authority of MERS to transfer interests

in notes and mortgages when designated as a nominee and mortgagee in the mortgage).

{¶ 24} In light of the above, the trial court did not err when it determined the Youngs lacked standing to challenge the validity of the assignments.

{¶ 25} The Youngs also contend that there were three competing allonges, which created an issue of fact as to when the allonges were created and which one controls. The record does not support their claim. The record shows that there was one allonge fixed to the note and endorsed in blank attached to the complaint. The Youngs have presented no evidence that these other two purported allonges function to legally assign the note to any entity.

{¶ 26} Notwithstanding the fact that the Youngs do not have standing to challenge the assignments, we find that the assignments were valid. We also find that the fact that FV-I was the holder of the note endorsed in blank means that FV-I had an equitable assignment of the mortgage. "'The physical transfer of the note endorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered.'" *Robinson* at ¶ 26, quoting *Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, at ¶ 65.

{¶ 27} In light of the above, the first assignment of error is overruled.

### Counterclaims

{¶ 28} In the second assignment of error, the Youngs contend that the trial court erred in granting summary judgment on their counterclaims.

{¶ 29} The Youngs counterclaimed against the appellees for (1) violations of the FDCPA, and (2) common law claims for fraud, abuse of process, and civil conspiracy. We shall consider each in turn.

## FDCPA

{¶ 30} The Youngs argue that the appellees violated the FDCPA by engaging in deceptive practices relative to their mortgage.

{¶ 31} The United States Congress enacted the FDCPA to

> eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses.

15 U.S.C. 1692a.

{¶ 32} Under the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. A debt collector is also prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f.

{¶ 33} To establish a prima facie case under the FDCPA, the Youngs must show that (1) they are a "consumer" within the meaning of the Act; (2) the debt arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the appellees were "debt collectors" within the meaning of the Act; and (4) the appellees violated a provision of the Act. *See Harper v. Weltman, Weinberg & Reis Co., L.P.A.*, 8th Dist. Cuyahoga No. 107439, 2019-Ohio-3093,

¶ 20, citing *Whittiker v. Deutsche Bank Natl. Trust Co.*, 605 F.Supp.2d 914, 938-939 (N.D.Ohio 2009) (setting forth the four elements to establish a prima facie case for a FDCPA violation). "'The absence of any one of the four essential elements is fatal to a FDCPA lawsuit.'" *Harper* at *id.*, quoting *Whittiker* at 939.

**Anselmo and Lykins[3]**

{¶ 34} The Youngs contend that Susana Lykins, an attorney in the Anselmo firm, and the Anselmo firm violated the FDCPA by: (1) making misrepresentations in the complaint, and (2) aiding and abetting in the use of false documents attached to the complaint.

{¶ 35} The trial court found that Lykins and Anselmo were acting in their capacity as an attorney and law firm and acted in good-faith reliance on their client's representations that FV-I was the holder of the note in the filing of the complaint. The court reasoned that Lykins and Anselmo had a "reasonable procedure in place designed to prepare an accurate foreclosure complaint including reasonable reliance on information from their client, review of the pleading and verification of possession of the note," and they did not intend to violate the FDCPA. The trial court also found that the complaint did not contain materially false statements:

> In addition, even if the Court were to find that Anselmo and Lykins violated the FDCPA, they have established each element of the bona fide error defense — i.e. that any such violation was unintentional and

---

[3]We consider the law firm, Anselmo, and its attorney, Susana Lykins, separately from the other appellees because they qualify as debt collectors under the meaning of the FDCPA.

resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

{¶ 36} We agree. Prior to filing the complaint, Anselmo separately sent Princess Townsend-Young and Willie Young a letter advising each that they were in default on their obligations to FV-I. The letter stated that as a result of the Youngs' bankruptcy discharge they were not personally liable for the debt but that FV-I may be entitled to foreclose on the mortgage.

{¶ 37} The evidence Anselmo and Lykins submitted in support of their motion for summary judgment reflects that the complaint in this case was prepared in accordance with the firm's usual practice, which was to have a paralegal draft the complaint and provide the complaint to attorney Lykins for review. Lykins reviewed the complaint to ensure the figures matched what was provided by the client, that the right exhibits were attached, the proper parties were named, and that FV-I had possession of the note.

{¶ 38} The Youngs have not provided any evidence supporting their theory that Anselmo or Lykins violated the FDCPA, other than merely asserting that the attorney and firm made misrepresentations and "aided and abetted" the other appellees in creating fraudulent documents.

**FV-I, SLS, and Saxon**

{¶ 39} The Youngs claimed that the remaining appellees were liable under the FDCPA because the first and second assignments of the mortgage were based on fraudulent documents. Again, in order for FV-I, SLS, and Saxon to fall under

the purview of the FDCPA, they must qualify as debt collectors. Under the FDCPA, a "debt collector" includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

{¶ 40} The trial court found that the Youngs could not make prima facie showing that the appellees violated the FDCPA because none of the appellees qualified as "debt collectors" under the act.

**FV-I**

{¶ 41} The trial court determined that FV-I could not be considered a debt collector because FV-I owned the Youngs' debt, which makes FV-I a creditor.

{¶ 42} In *Wells Fargo Bank, N.A. v. Carver*, 2016-Ohio-589, 60 N.E.3d 473, ¶ 39 (8th Dist.), this court explained that the distinction between a creditor and a debt collector lies in the language of the FDCPA, specifically, 15 U.S.C. 1692a(6)(F)(iii):

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir.2012). The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Id.*, citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-108 (6th Cir.1996).

{¶ 43} In *Henson v. Santander Consumer USA Inc.,* ___ U.S. ___ , 137 S.Ct. 1718, 1724, 198 L.Ed.2d 177 (2017), the United States Supreme Court also noted that 15 U.S.C. 1692a(6)(F)(iii) excludes from "the debt collector definition certain persons who acquire a debt before default * * * ."[4]

{¶ 44} Pursuant to the express terms of the FDCPA, because FV-I obtained the Youngs' debt before it was in default, FV-I was a creditor and, therefore, was not a debt collector.

**SLS**

{¶ 45} The Youngs contend that SLS's status as a loan servicer — not a lender — means it is absolutely barred from being a creditor under the FDCPA.

---

[4]The *Henson* court suggests that the determining factor is not solely the default status of the loan at the time it was acquired:

> For while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all and again, under the definition at issue before us you have to attempt to collect debts owed another before you can ever qualify as a debt collector. * * * Likewise, even spotting (without granting) the premise that a person cannot be both a creditor and a debt collector with respect to a particular debt, we don't see why a defaulted debt purchaser like Santander couldn't qualify as a creditor. For while the creditor definition excludes persons who "receive an assignment or transfer of a debt in default," it does so only (and yet again) when the debt is assigned or transferred "*solely* for the purpose of facilitating collection of such debt for another." *Ibid.* (emphasis added). So a company collecting purchased defaulted debt for its own account—like Santander—would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.

*Id.* at 1214.

Because the debt in this case was purchased by FV-I and serviced by SLS prior to the Youngs defaulting on their loan, we need not consider whether either entity would qualify as a debt collector under the premise set forth in *Henson.*

{¶ 46} The trial court concluded that SLS was a creditor pursuant to the FDCPA because the Youngs' loan was current at the time the loan was transferred to SLS. We agree — the Youngs have presented no evidence that SLS treated the loan as though it were in default at the time it took over servicing the loan.

{¶ 47} Moreover, SLS's status as a loan servicer or lender is irrelevant for the purposes of determining its status as a debt collector or creditor under the FDCPA. Under the FDCPA a loan servicer "can either stand in the shoes of a creditor or become a debt collector depending on whether the debt was assigned for servicing before the default or after the alleged default occurred." *Carver*, 2016-Ohio-589, 60 N.E.3d 473, at 480-481.

{¶ 48} Here, SLS acquired servicing of the Youngs' loan before the default occurred. Because the Youngs' loan was not in default or treated as in default by SLS at the time of service transfer, SLS is not a debt collector and is not liable under the FDCPA.

**Saxon**

{¶ 49} The magistrate granted Saxon's motion for summary judgment finding that even if Saxon could be considered a "debt collector" under the FDCPA, the Youngs' claims would still fail because the Youngs did not have standing to challenge the validity of the second assignment of the mortgage. We agree. Moreover, the record shows that Saxon collected no debts since the termination of its servicing business in 2012; therefore, it neither maintained a business with the

principal purpose of collecting debts nor regularly collected debts at any time relevant to the Youngs' counterclaims.

**Barnes v. Routh Crabtree Olsen PC**

{¶ 50} We consider the following case, *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 996 (9th Cir.2020). While it is not binding on this court, it is instructive.

{¶ 51} In *Barnes*, the plaintiff homeowner filed a complaint in federal court alleging that Fannie Mae, Fannie Mae's loan servicer, the law firm that represented Fannie Mae in the foreclosure proceeding, and the law firm's attorneys had violated the FDCPA, various state laws, and engaged in civil conspiracy. The defendants had previously attempted to foreclosure on Barnes's home in state court.

{¶ 52} The *Barnes* Court considered whether the defendants' pursuit of judicial foreclosure was a form of debt collection and found that it was not, holding that a "judicial foreclosure proceeding is not a form of debt collection when the proceeding does not include a request for a deficiency judgment or some other effort to recover the remaining debt." *Id.* at 997, 1001. The court determined that because the plaintiff "pleaded no conduct by the defendants beyond the filing of a foreclosure complaint and actions to effectuate that proceeding," the district court properly granted the defendants' motion to dismiss. *Id.* at 1001.

{¶ 53} The *Barnes* Court focused, at least in part, on the distinction between "collecting money" and "security-interest enforcement." *Id.* at 998. The

court noted that unless "a deficiency judgment is on the table in the proceeding, a person judicially enforcing a deed of trust is seeking only the return or sale of the security, not to collect a debt." *Id.* at 999.

{¶ 54} The Youngs claim that the fact that the appellees were not seeking to collect money or enforce a monetary judgment against them is not determinative because the original complaint sought

> $44,802.77 * * * plus interest at the rate of 3.25000% per year from March 1, 2016, plus late fees, prepayment penalty if applicable, title charges, court costs and expenses for the preservation and maintenance of the real estate, prior to and subsequent to the filing of this Complaint.

But the complaint did not seek to recover that amount, or any amount of money, from the Youngs.

{¶ 55} While Ohio law permits a creditor to recover money from a debtor after foreclosure if the property sells for less than the debt, *see generally* R.C. 2329.08, in this case, there was no deficiency judgment; therefore, the appellees were only seeking the return or sale of the security, not to collect a debt.

{¶ 56} Based on the foregoing, the FDCPA is inapplicable to the case at bar.

### State Law Claims

{¶ 57} We now turn to the Youngs' state law claims for fraud and conspiracy.

**Fraud**

{¶ 58} The elements of a claim of fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

(Citations omitted.) *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶ 59} A cause of action for fraud will only lie when the complainant actually relied upon the representation, to his or her detriment, and the claimed injury must flow from the complainant's reliance on the alleged misrepresentation. *Glazer v. Chase Home Fin., L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 83, citing *Morgan Stanley Credit Corp. v. Fillinger*, 2012-Ohio-4295, 979 N.E.2d 362 (8th Dist.).

{¶ 60} The Youngs asserted in their counterclaims that the appellees created false documents to foreclose on the Youngs and misrepresented the real party in interest in the foreclosure. They additionally charge that the appellees (not including Saxon) misrepresented the amount due, and concealed (1) that the Youngs' personal liability had been discharged in bankruptcy, and (2) that conditions precedent to filing the lawsuit had not been satisfied.

**Saxon**

{¶ 61} The Youngs contend that all counterclaimants are liable for the creation of and use of false documents to accomplish the foreclosure, including

Saxon, yet they make no argument specific to Saxon. The record shows that Saxon was not involved in the foreclosure, because it stopped servicing the loan in 2012.

**FV-I and SLS**

{¶ 62} The trial court found that neither FV-I nor SLS made a material misrepresentation to the Youngs and the Youngs did not rely on these alleged misrepresentations by actively pursuing litigation against the entities.

{¶ 63} The Youngs produced no evidence showing an issue of material fact that FV-I or SLS made material misrepresentations to the Youngs. Moreover, the Youngs actively pursued litigation against the parties; thus, we are unpersuaded by their claim that they relied on any of the companies' misrepresentations.

**Anselmo and Lykins**

{¶ 64} The trial court found that Anselmo and Lykins are immune from liability because they were acting in good-faith representation of their client: "Even if the Court were to find that Anselmo and Lykins are not immune from the liability * * * the fraud claim fails as (1) Anselmo and Lykins did not make any false representations, (2) the Youngs did not rely on false representations, and (3) the Youngs were not damaged."

{¶ 65} The record reflects that Anselmo and Lykins acted as a law firm and attorney, representing their client, to recover a debt. "[A]n attorney is immune from liability to third persons arising from his [or her] performance as an attorney in good faith on behalf of, and with the knowledge of his [or her] client, unless such third person is in privity with the client or the attorney acts maliciously." *Scholler*

*v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984), paragraph one of the syllabus. This doctrine has been broadly applied to tort claims. *See generally Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-1057, 806 N.E.2d 567 (10th Dist.). The Youngs cannot overcome the doctrine of qualified immunity unless they are able to demonstrate privity with the firm's client or were able to show that the firm and lawyer acted with malice. *Solomon v. Harwood*, 8th Dist. Cuyahoga No. 96256, 2011-Ohio-5268, ¶ 26; *Hahn* at ¶ 62.

{¶ 66} The Youngs have not shown that they are in privity with FV-I or SLS or that Lykins or Anselmo acted with malice. Based on the sparse evidence submitted in response to appellees' motion for summary judgment, the Youngs are unable to overcome application of qualified immunity.

**Civil Conspiracy**

{¶ 67} The Youngs further claimed that the appellees conspired to foreclose on their home.

{¶ 68} A civil conspiracy consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 40 (10th Dist.), citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). The malice involved is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d

859 (1998), citing *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960).

{¶ 69} "An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed." *Williams v. United States Bank Shaker Square*, 8th Dist. Cuyahoga No. 89760, 2008-Ohio-1414, ¶ 16, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996). Thus, the Youngs must show the appellees committed an underlying unlawful act to support their conspiracy claim. But we have already found the Youngs are unable to establish any of their underlying claims; therefore, the Youngs also cannot state a claim for conspiracy against the appellees. *See Glazer*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, at ¶ 92, citing *Gator Dev. Corp. v. VHH, Ltd.*, 1st Dist. Hamilton No. C-080193, 2009-Ohio-1802, ¶ 32-33.

{¶ 70} As to any other unlawful act that appellees allegedly conspired to do, the Youngs have given no more than vague or conclusory allegations unsupported by material facts. *See Glazer* at ¶ 93. Therefore, we find that the trial court properly granted summary judgment to the appellees on claims for fraud and civil conspiracy.

{¶ 71} For the foregoing reasons, the second assignment of error is overruled.

**Class Claims**

{¶ 72} In the third assignment of error, the Youngs contend that the trial court erred in dismissing their class claims.

{¶ 73} The Youngs claim that the dismissal of the class claims "violates the trial court's obligations under Civ.R. 23." In this case, the trial court stayed class discovery pending its decision on the Youngs' individual claims. The trial court never considered a class certification motion or certified a class.

{¶ 74} The Youngs' individual claims were dismissed by the trial court vitiating any standing the Youngs would have to bring claims on behalf of others because the court determined that the Youngs had no case or controversy for which they could raise claims. Therefore, based on the dismissal of the Youngs' individual claims, the class claims have been mooted because they cannot proceed with the Youngs as their representative. *See Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir.1993) ("Where * * * the named plaintiff's claim becomes moot before certification, dismissal of the action is required.")

{¶ 75} Thus, the trial court did not err in dismissing the Youngs' class claims.

{¶ 76} The third assignment of error is overruled.

{¶ 77} The record before this court demonstrates that there was no genuine issue of material fact and the evidence supports the trial court's decision in granting FV-I a decree of foreclosure on the Youngs' real property. There was no genuine issue of material fact to be litigated on the Youngs' counterclaims; therefore, the trial court properly granted summary judgment on the appellees' motion for summary judgment. The trial court also properly dismissed the class claims.

**{¶ 78}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR